CARNEY v DEPARTMENT OF TRANSPORTATION

Docket No. 77526. Submitted April 11, 1985, at Lansing.—Decided
September 16, 1985. Leave to appeal denied, 424 Mich —.

Plaintiff, Kimbra Carney, was injured when she lost control of
her vehicle, which struck a guardrail, traveled along the guard-
rail until reaching an opening at a private driveway, went
through the opening, and struck a tree before coming to rest.
The driveway opening in the guardrail was 39 feet wide, and
the tree was 25 feet from the driveway and 16 feet from the
highway. Plaintiff brought an action for damages against the
Michigan Department of Transportation, alleging that the de-
fendant was negligent in several respects, including allowing
the tree to remain within 20 feet of the highway, installing the
guardrail in a negligent manner and allowing the existence of
the driveway and the 39-foot opening in the guardrail. Plaintiff
also alleged that defendant had created and maintained an
intentional nuisance in fact. The Court of Claims, Thomas L.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Highways, Streets, and Bridges §§ 64-85, 450 et seq.
Liability of governmental unit or private owner or occupant of land
abutting highway for injuries or damage sustained when motorist
strikes tree or stump on abutting land. 100 ALR3d 510.
Liability, in motor vehicle-related cases, of governmental entity for
injury, death, or property damage resulting from defect or ob-
struction in shoulder of street or highway. 19 ALR4th 532.

[2] Am Jur 2d, Appeal and Error § 76.
Power of trial court, on remand for further proceedings, to change
prior fact findings as to matter not passed upon by appellate
court, without receiving further evidence. 19 ALR3d 502.

[3] Am Jur 2d, Highways, Streets, and Bridges §§ 178-183.
See the annotations in the ALR3d/4th Quick Index under Adjoining
or Abutting Landowners.

[4] Am Jur 2d, Negligence §§ 234 et seq.
See the annotations in the ALR3d/4th Quick Index under High-
ways and Streets.

[5, 7] Am Jur 2d, Nuisances §§ 5-13.
See the annotations in the ALR3d/4th Quick Index under Nui-
sances.

[6, 7] Am Jur 2d, Nuisances § 55.

[7] Am Jur 2d, Nuisances § 32.

Brown, J., held that defendant had not breached its duty to maintain the highway in a reasonably safe condition and was not liable for maintenance of an intentional nuisance. Plaintiff appealed from the judgment entered in favor of defendant. *Held:*

1. The statutory duty of defendant to maintain the roadway extends to the shoulders and guardrails, but does not extend to the area completely outside the traveled portion of the roadway. Defendant's failure to remove or guard the tree was not a breach of that duty.

2. The Court of Claims did not clearly err in finding that the 39-foot opening in the guardrail was not unreasonably large, or in finding that the guardrail was not negligently designed so as to direct a vehicle through the opening and into the tree.

3. Standards of the American Association of State Highway and Transportation Officials relating to the placement of barriers are not mandatory and do not represent the minimum standard of care in highway design. The standards are guidelines, and violation of the standards does not constitute negligence as a matter of law. Furthermore, the trial court did not clearly err in finding that defendant had, in fact, complied with the standards.

4. The defendant did not create a nuisance in its design or construction of the guardrail. In the absence of a finding of a nuisance, it is unnecessary to decide whether the alleged nuisance was intentional.

Affirmed.

B. A. JASPER, J., concurred but wrote separately to clarify the standard to be used in determining whether a governmental agency has created an intentional nuisance in fact. To prevail on a claim of intentional nuisance the plaintiff must show that the condition complained of is, in fact, a nuisance and that the condition was created intentionally. There is no requirement to show that the governmental agency must have known that harm to the plaintiff was substantially certain to follow as a result of its actions.

### OPINION OF THE COURT

1. HIGHWAYS — MAINTENANCE OF HIGHWAYS — DUTY — TREES.

The statutory duty of a governmental agency having jurisdiction over a highway to maintain that highway in reasonable repair is not limited to the paved portion of the roadway, but includes proper maintenance of the shoulder and adjacent guardrails; the duty to "maintain" a tree along the road depends upon whether the tree is positioned such that the average vehicle

could strike the tree without any of its wheels leaving the shoulder (MCL 691.1402; MSA 3.996[102]).

2. Appeal — Findings of Fact — Clear Error.

The Court of Appeals will not set aside a trial court's findings of fact unless they are clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the Court of Appeals on the entire evidence is left with a firm conviction that a mistake has been committed.

3. Highways — Property — Right of Access — Driveways.

The owner of land abutting a highway has a right of access to the land from the highway; the state has regulatory authority over driveways providing such access which came into existence after August 6, 1969 (MCL 247.321 et seq.; MSA 9.140[21] et seq.).

4. Negligence — Violation of Statutes.

Violations of statutes, rules and regulations establish a prima facie case of negligence, with the determination to be made by the finder of fact of whether the party accused of violating a statute, rule or regulation has established a legally sufficient excuse.

5. Nuisance — Nuisance in Fact.

A nuisance in fact becomes a nuisance by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on persons or property.

6. Nuisance — Governmental Immunity — Intentional Nuisance in Fact.

A claim of an intentional nuisance in fact is not barred by governmental immunity; in order to find an intentional nuisance, the evidence must show that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance.

Concurrence by B. A. Jasper, J.

7. Nuisance — Governmental Immunity — Intentional Nuisance in Fact.

*A plaintiff, in order to prove an intentional nuisance and so overcome the bar of governmental immunity, must show first that the particular condition complained of is in fact a nuisance and second, if so, that the condition was intentionally created; there is no requirement to show that the governmental*

*agency must have known that harm to a plaintiff was substantially certain to follow as a result of its actions.*

*Jerry L. Sumpter, J.D., P.C.* (by *Richard A. Smith*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: R. B. BURNS, P.J., and SHEPHERD and B. A. JASPER,* JJ.

SHEPHERD, J. Following a bench trial, the Court of Claims entered a judgment of no cause of action on plaintiff's claims of negligent highway design, MCL 691.1402; MSA 3.996(102), and intentional nuisance. Plaintiff appeals as of right. We affirm.

Plaintiff was traveling northward on US-23 when her vehicle veered to the right onto the east shoulder. Plaintiff overadjusted the car leftward to the centerline. She then overcorrected to the right and struck the guardrail to the east of the highway. The car traveled along or possibly on top of the guardrail until it reached an opening where a private driveway intersected the highway. The car proceeded through the opening, struck one of numerous trees in the vicinity, and eventually came to rest at the bottom of a ditch or gully approximately 15 feet below the highway.

US-23 at the site of plaintiff's accident is a two-lane, paved, state trunk highway. The guardrail which plaintiff struck was located eight and one-half feet from the eastern edge of the northbound lane. It protected motorists from plunging down a steep embankment with a "one:two" slope (a one-

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

foot vertical drop for each two horizontal feet). The driveway opening in the guardrail was approximately 39 feet wide. Plaintiff hit a tree which stood 25 feet from the driveway and 16 feet from the highway.

In count I of her complaint, plaintiff claimed that she had been injured as a proximate result of defendant's negligence. Plaintiff asserted that defendant breached its duty to maintain the highway in a reasonable, safe and fit manner in the following ways: allowing to remain and failing to remove a large tree located within 20 feet of the highway; failing to guard, protect, or give notice to traveling motorists of a 15-foot fill located at the base of an unprotected tree, and within 20 feet of the traveled highway; failing to guard, protect or give notice of a large tree within 20 feet of the highway; installing a guardrail in such a manner as to channel, funnel or direct an errant automobile into a fixed roadside obstacle, the tree; allowing the driveway to exist and building a guardrail with a gap of 39 feet. In count II, plaintiff claimed that, in breaching its duty as set forth in count I, defendant created and maintained an intentional nuisance in fact.

The trial court found that the placement of the guardrail was warranted by the steep slope off the eastern side of the road. Defendant was required to permit persons living along that portion of the highway access to the road by allowing the existence of a driveway and by creating an opening in the guardrail for a driveway. The trial court determined that there was insufficient evidence to justify a finding that plaintiff would not have been as severely injured if a barrier had been erected around the tree or if a barrier had been placed along the north edge of the driveway. The trial court further determined that the standards of the

American Association of State Highway and Transportation Officials (AASHTO), see, 23 CFR 625 *et seq.*, did not establish minimum safety standards for the placement of barriers, but were mere guidelines or "goals" for state highway departments. According to the trial court, strict compliance with the AASHTO standards was impractical in the instant case due to environmental and financial constraints. Moreover, the trial court found that defendant's placement and maintenance of the guardrail were not contrary to the general principles set forth by AASHTO. the trial court concluded that defendant had not breached its duty to maintain US-23 in a reasonably safe condition.

In addition, the trial court found that defendant was not liable for maintenance of an intentional nuisance. The court noted that defendant had not negligently or improperly constructed the guardrail so as to purposely direct errant vehicles into the tree. The tree itself provided motorists with no greater hazard than would the placement of barriers around the tree or down the side of the highway.

Under MCL 691.1402, defendant may be held liable for failure to maintain a highway in reasonable repair:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * * The duty of the state and the county road commissions to repair and maintain highways, and the liability

therefor, shall extend only to the improved portion of
the highway designed for vehicular travel and shall not
include sidewalks, crosswalks or any other installation
outside of the improved portion of the highway designed
for vehicular travel."

This statutory duty is not limited to the paved
portion of the road, but includes proper mainte-
nance of the shoulder and adjacent guardrails.
*McKee v Dep't of Transportation,* 132 Mich App
714, 721; 349 NW2d 798 (1984); *Moerman v Kala-
mazoo County Road Comm,* 129 Mich App 584,
592; 341 NW2d 829 (1983); *Hall v Dep't of State
Highways,* 109 Mich App 592; 311 NW2d 813
(1981), *lv den* 413 Mich 942 (1982). It "extends to
the maintenance of conditions that affect the
safety of motorists using the improved portion of
the highway designed for vehicular travel". *Moer-
man, supra,* p 592. In *Moerman,* p 593, this Court
held that whether the defendant had a duty to
"maintain" a tree turned on whether "the tree
was positioned such that the average vehicle could
have struck the tree without *any* of the vehicle's
wheels leaving the shoulder". (Emphasis added.)[1]

In this case, plaintiff's automobile was out of
control and had completely departed from the road
when it struck the tree. The tree was not within
reach of a vehicle with all four wheels on the
shoulder. We must bear in mind the Legislature's
restriction of defendant's duty "only to the im-
proved portion of the highway designed for vehicu-
lar travel." MCL 691.1402. The particular allega-
tions of negligence which are based solely on

---

[1] The *Moerman* panel reversed its original ruling on rehearing, but
for reasons which had nothing to do with its approach to the scope of
the agency's duty. 141 Mich App 154; 366 NW2d 223 (1984). The
panel adopted Judge WALSH's dissent to its original opinion. Judge
WALSH's dissent contained nothing inconsistent with the rule we
adopt herein. See, 129 Mich App 601. Ultimately, a judgment for the
defendant road commission was affirmed. 141 Mich App 155.

defendant's failure to remove or guard the tree do not, in our view, constitute a viable claim under MCL 691.1402. Additionally, we have reviewed the photographic exhibits admitted at trial. This was a country road lined by numerous trees and other vegetation. Defendant's duty to maintain the road in reasonable repair does not entail deforestation of the surrounding countryside.

Plaintiff's remaining claims involve the design of the guardrail. More particularly, she asserts that the driveway opening was too wide and that the guardrail channeled her car into the unguarded tree. According to plaintiff, these deficiencies violated AASHTO standards which, again in her view, are mandatory and set the minimum standard of care in the field of highway maintenance. Plaintiff also claims that the existence of these conditions constituted an intentional nuisance. The trial court found for defendant on each of these claims.

"This Court does not set aside the trial court's findings of fact unless they are clearly erroneous. GCR 1963, 517.1; *Borkus v Michigan National Bank,* 117 Mich App 662, 670; 324 NW2d 123 (1982). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976); *Borkus, supra,* p 670." *Sasanas v Manufacturers National Bank of Detroit,* 130 Mich App 812, 817; 345 NW2d 621 (1983).

In this case, we find no clear error by the trial court.

Plaintiff argues that the gap in the guardrail was unreasonably wide. The owner of the abutting property has a right of access to the land itself from the highway. *State Highway Comm v Sandberg,* 383 Mich 144, 148-149; 174 NW2d 761 (1970).

Under current law, the state has regulatory authority over such driveways, MCL 247.321 *et seq.;* MSA 9.140(21) *et seq.,* but this authority does "not apply to driveways in existence on August 6, 1969". MCL 247.327; MSA 9.140(27). The driveway in question existed prior to August 6, 1969. The state lacked authority to close the driveway completely with a guardrail. The issue is whether the opening was unreasonably large.

A supervisory design engineer employed by defendant testified that driveway openings should be as narrow as is "practical", given the angle of the driveway and the size and speed of vehicles which are used to enter it. The driveway in this case ran parallel to the highway until it approached the intersection, where there was a sharp curve. This necessitated a wider than normal opening to permit safe entry. In the witness's opinion, the gap was not unreasonably wide. Another expert witness agreed with this analysis. It is noteworthy that plaintiff's expert witness testifed that the driveway was difficult to enter even in its present state.

Plaintiff urges that defendant is liable because the driveway opening directed her vehicle into the tree. According to plaintiff, if one could not reasonably expect defendant to narrow the opening, defendant could have prevented her injuries by placing a barrier between the opening and the tree, or around the tree itself. We are not left with a definite and firm conviction that the Court of Claims erred by rejecting this view of the evidence. There was expert testimony that, given the velocity of plaintiff's vehicle and the steep decline, an abrupt collision with a barrier would have been just as injurious to her or more so. Furthermore, we perceive once again in this argument a not so subtle effort to stretch defendant's duty to a point

beyond that contemplated by the Legislature. MCL 691.1402. Defendant did not act negligently by creating the opening. We cannot say that by doing so it shouldered responsibility for every tree within range of a vehicle careening through that opening.

Plaintiff argues that the AASHTO standards are mandatory and signify the minimum standard of care in highway design. We disagree. The standards are goals utilized by governmental agencies. They "are intended as *guidelines* for those reponsible for the design, installation, and maintenance of traffic barriers". 23 CFR 625.3(20), I-C (emphasis in original):

"* * * It is recognized that limited budgets may preclude the full implementation of these guidelines. In those cases, a priority system should be established to insure that cost-effective alternatives are employed.

"The guide relates primarily to the *protective* aspects of traffic barriers. These guidelines must be considered together with social, environmental, and economic factors.

"Due to the complex nature of the subject matter, many of the criteria contained in this guide are by necessity based on subjective data. In some areas, only general suggestions and recommendations can be made. It can therefore not be overemphasized that *application of these guidelines must be made in conjunction with sound evaluation of the facts and engineering judgment to effect the proper solution." Id.* (Emphasis in original.)

Even if the standards were mandatory, we would reject plaintiff's contention that violations of the standards constitute negligence as a matter of law. In this state, violations of statutes, rules and regulations are evidence of negligence and establish a prima facie case, "with the determination to be made by the finder of fact whether the party accused of violating the statute has estab-

lished a legally sufficient excuse". *Zeni v Anderson,* 397 Mich 117, 143; 243 NW2d 270 (1976); *Beals v Walker,* 416 Mich 469, 481; 331 NW2d 700 (1982).

The Court of Claims found that defendant complied with the standards. The court took note of the various budgetary, environmental and safety considerations. In addition, the court found itself unable to conclude that plaintiff would have fared better even if defendant had acted according to the strict letter of the AASHTO guidelines, without regard to the other relevant factors. These findings are not clearly erroneous.

Finally, plaintiff seeks to revive her intentional nuisance claim. Plaintiff argues that "defendant's conduct was intentional in that it intended to build the guardrail where and as it did", and defendant "knew or should have known what would eventually occur".

A nuisance is predicated upon the existence of a dangerous condition. *Rosario v City of Lansing,* 403 Mich 124, 132; 268 NW2d 230 (1978) (opinion of FITZGERALD, J.). A nuisance in fact becomes a nuisance "by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property". *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959).

Although no clear majority view emerged from the Supreme Court on when governmental immunity bars a nuisance claim in *Rosario, supra,* and its companion case, *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), a majority of the justices agreed that a claim of intentional nuisance in fact was not barred. Court of Appeals cases decided after *Rosario* and *Gerze-*

*ski* have held that nuisances in fact must be intentional to avoid immunity. See *Martin v Michigan,* 129 Mich App 100, 109; 341 NW2d 239 (1983); *Crosby v Detroit,* 123 Mich App 213, 221-222; 333 NW2d 557 (1983); *Ford v Detroit,* 91 Mich App 333, 335-336; 283 NW2d 739 (1979). To find intentional nuisance, the evidence must show that "the governmental agency intended to bring about the conditions which are in fact found to be a nuisance". *Rosario, supra,* p 142 (opinion of MOODY, J.).

When a nuisance in fact is alleged, the trier of fact must first determine whether the condition or act creates a nuisance. If the trier of fact finds the existence of a nuisance in fact, it must then determine whether the nuisance was created intentionally. The plaintiff's claim avoids governmental immunity only if the trier of fact finds both the nuisance and the intent. *Rosario, supra,* p 142.

In the present case, the trial court sitting as the trier of fact found that defendant had not created a nuisance in the construction or design of the guardrail, or by not placing barriers around the tree or down the side of the driveway. We conclude that the findings of fact by the trial court are not clearly erroneous. MCR 2.613(C). Moreover, we note that if defendant was not negligent in placing or designing the guardrail and defendant had no statutory duty to remove or guard the tree, as a matter of law a nuisance could not arise from these same facts. In light of our conclusion that there was no nuisnace, it is unnecessary to address whether the alleged nuisance was intentional. Furthermore, the Supreme Court did not address the issue of whether governmental immunity barred a nuisance claim in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 657; 363 NW2d 641 (1984), and in light of our finding that there was

no nuisance, we also find it unnecessary to address the issue.

Affirmed.

R. B. BURNS, P.J., concurred.

B. A. JASPER, J. *(concurring)*. I write separately because I do not subscribe to the view expressed in *Ford v Detroit,* 91 Mich App 333, 336; 283 NW2d 739 (1979); *Martin v Michigan,* 129 Mich App 100, 109; 341 NW2d 239 (1983), and *Crosby v Detroit,* 123 Mich App 213, 223; 333 NW2d 557 (1983), cited by the majority, as being the law in Michigan regarding what a plaintiff must show in order to prevail in an intentional nuisance action against the government.

*Ford, Martin* and *Crosby* misapprehend the proof requirement enunciated by the Supreme Court in *Rosario v City of Lansing,* 403 Mich 124, 142; 268 NW2d 230 (1978), and *Gerzeski v Dep't of State Highways,* 403 Mich 149, 161-162; 268 NW2d 525 (1978), *reh den* 403 Mich 956 (1978).

In both *Rosario* and *Gerzeski,* the Supreme Court articulated what must be shown in an intentional nuisance case against the government as follows:

" 'A second [type of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance.' " *Rosario, supra,* p 142; *Gerzeski, supra,* pp 161-162. (Quoting from *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 [1952].)

Thus, to prove an intentional nuisance, a plaintiff must first show that the particular act or thing complained of is in fact a nuisance. If the trier of

fact finds that the act or thing is a nuisance, the trier of fact then proceeds to determine whether the existence of that nuisance was intended. The word "intended" or "intentional" in this context does not mean that a "wrong" or the "existence of the nuisance" was intended; but rather, the only question for the trier of fact is whether the "condition" found to be a nuisance was itself intended. Stated another way, the only question to be asked of the trier of fact after it answers yes to whether the condition is a nuisance is: Upon your finding that this condition is a nuisance, was this condition intentionally created by the government? If the trier of fact answers affirmatively to this second inquiry then the government is liable under the intentional nuisance theory.

The apparent confusion in this area of governmental liability first arises in *Ford, supra,* p 336. In *Ford,* this Court first stated the proof requirement applied in *Martin* and *Crosby.* Thereafter, this Court has cited *Ford v Detroit* and its progeny without analysis of either *Rosario* or *Gerzeski,* or both. After stating the perceived proof requirement, *Ford* cites both *Rosario* and *Gerzeski* in support of this approach. However, upon reading the jump pages attributed to *Rosario* and *Gerzeski* by *Ford,* I find that the proof requirement advanced in *Ford* is not the correct standard. *Ford* places a heavier burden on plaintiffs than was established in *Rosario* and *Gerzeski. Ford* states that the government must have known that harm to plaintiff was substantially certain to follow as a result of its actions. *Ford, supra,* p 336. In other words, that the government intentionally harmed plaintiff. However, *Rosario* and *Gerzeski* state merely that plaintiff's proof requirement is two-fold: (1) Is the condition a nusiance? And, if so, (2) did the government intend to create the condition? See

*Rosario, supra,* p 142; *Gerzeski, supra,* pp 161-162.
Further research evidences how *Ford* arrived at its
standard. In *Rosario,* the Supreme Court provided
a footnote which served as an observation of what
Professor Prosser said regarding nuisances. See
*Rosario, supra,* p 143, fn 2. Seizing this language,
the Court in *Ford* held that that was what a
plaintiff had to prove in his or her intentional
nuisance case against the government. However,
the Court in *Ford* went a step further and also
cited *Gerzeski* as stating the same proposition.
However, nowhere in the *Gerzeski* opinion does
this or similar language appear, much less at the
pages cited in *Ford.* In fact, at the page numbers
cited in *Ford v Detroit* with reference to *Gerzeski,*
the Supreme Court's concurring justices[1] restated
the proof requirement they articulated earlier in
*Rosario,* as follows:

"'A second [type of nuisance] includes nuisances
which are intentional, using that word as meaning not
that a wrong or the existence of a nuisance was in-
tended but that the creator of them intended to bring
about the conditions which are in fact found to be a
nuisance.'" *Gerzeski, supra,* pp 161-162. See, also, *Ro-
sario, supra,* p 142. (Quoting from *Denny v Garavaglia,*
333 Mich 317, 331; 52 NW2d 521 [1952].)

One need only consider the facts in *Gerzeski* to
understand that *Ford v Detroit* and its progeny

---

[1] Justices MOODY and WILLIAMS concurred with Justices FITZGER-
ALD, LEVIN and KAVANAGH in concluding that an action sounding in
nuisance overcomes assertions of governmental immunity. However,
Justices MOODY and WILLIAMS limited the type of nuisance that could
give rise to governmental liability; *viz.,* they held that only inten-
tional nuisances could create such liability. Because no clear majority
of the Supreme Court has ever concurred in what type of nuisance
will create liability in the government, the concurring opinion of
Justices MOODY and WILLIAMS in *Rosario* and *Gerzeski* is considered
to be controlling as to what type of nuisance will prevail against a
claim of governmental immunity.

have been misstating what proofs are required of a plaintiff in an intentional nuisance case against the government. The condition at issue in *Gerzeski* (*i.e.,* the frozen nature of a pond) was factually determined to be a nuisance. The pond had been constructed by the governmental agency in the path of a warm water flow known as the "Bell drain". Because of this condition, the pond took on a deceptive appearance and, in a sense, created a trap for those crossing the surface. Based upon these facts, the defense of governmental immunity was inapplicable. As stated by Justice MOODY: "* * * the bar of governmental immunity is inapplicable when a trier of fact determines as in this case, that the alleged nuisance was intentional, *i.e.,* that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance". *Gerzeski, supra,* p 162. There was no requirement in *Gerzeski,* as propounded in *Ford v Detroit,* that plaintiff had to show that the government knew or must have known that harm to plaintiff was substantially certain to follow.

Thus, assuming, *arguendo,* the continuing viability of the intentional nuisance theory as being a recognized judicial exception to governmental immunity,[2] I believe this Court should correctly state the elements which plaintiff must show to make

[2] In *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 591-592; 363 NW2d 641 (1984), the Supreme Court did not expressly reaffirm that a nuisance theory would serve as an exception to governmental immunity. However, it did suggest *sub silentio* that this judicially created exception still exists in Michigan. See 420 Mich 567, 657. At least one opinion released by this Court has read the Supreme Court's treatment of the nuisance issue in *Disappearing Lakes Ass'n v Dep't of Natural Resources,* a companion case to *Ross,* as reaffirming governmental liability for governmentally created nuisances. See *Landry v Detroit,* 143 Mich App 16, 25; 371 NW2d 466 (1985). Likewise the present makeup of the Supreme Court includes only three of the original justices who took part in the *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), *reh den* 403 Mich 956 (1978), decisions. Justice LEVIN held the view that all

out a case of intentional nuisance against the government. These proof requirements are well-stated in *Rosario, supra,* p 142, and *Gerzeski, supra,* pp 161-162, and quoted twice above.

Turning now to the merits of this case, because I do not have a definite and firm conviction that the Court of Claims committed clear error in its finding that the guardrail was not a nuisance, I vote to affirm the Court of Claims decision. MCR 2.613(C); *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

---

nuisances, whether intentionally or otherwise created, subjected the government to liability. Justice WILLIAMS sided with Justice MOODY in declaring that only intentional nuisances were actionable. And, finally, Justice RYAN held the view that the nuisance exception is limited to two subclasses of nuisance: "nuisances per se" and "intruding nuisances". Therefore, given this great divergence in the area of nuisance liability vis-à-vis the government, and the Supreme Court's silence in *Ross* on the subject, it remains unclear whether the Supreme Court will still apply this judicially created exception in the face of an assertion of governmental immunity.