PETERSON v DEPARTMENT OF TRANSPORTATION

Docket Nos. 78840, 82957. Submitted April 9, 1986, at Grand Rapids.
Decided October 6, 1986. Leave to appeal applied for.

Linda L. Peterson was seriously injured when the vehicle she was
driving went off M-55 and struck a tree in Manistee County.
She filed a negligence action against the Department of Trans-
portation in Manistee Circuit Court alleging that defendant
violated its statutory duty to maintain the road in reasonable
repair and in a condition reasonably safe and fit for travel.
Plaintiff later sought, but was denied, leave to amend her
pleadings to add a count of intentional nuisance. The trial
court, Charles A. Wickens, J., sitting without a jury, found that
defendant was negligent in (1) allowing the tree to grow within
close proximity to the highway and (2) allowing a two- to five-
inch drop-off between the surface and the shoulder of M-55. The
court also found that both the tree and the drop-off were
dangerous conditions of which defendant had notice prior to
the accident. The court found in favor of plaintiff and awarded
her damages in the amount of $7,256,905. Plaintiff appealed
from the trial court's denial of her motion to amend her
pleadings to add a count of intentional nuisance. Defendant
appealed from the judgment, challenging the trial court's find-
ing of liability and the amount of damages. Plaintiff cross-
appealed from the award of damages. The appeals have been
consolidated.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Damages §§ 85 *et seq.*

Am Jur 2d, Highways, Streets and Bridges §§ 337 *et seq.*

Liability, in motor vehicle-related cases, of governmental entity for
injury, death, or property damage, resulting from defect or ob-
struction in shoulder of street or highway. 19 ALR4th 532.

Liability of governmental unit or private owner or occupant of land
abutting highway for injuries or damage sustained when motorist
strikes tree or stump on abutting land. 100 ALR3d 510.

See also the annotations in the Index to Annotations under Dam-
ages; Danger and Dangerous Conditions; Highways and Streets;
Pain and Suffering.

1. The trial court's finding that defendant had notice of the drop-off prior to the accident is not clearly erroneous.

2. The fact that all four of the wheels of plaintiff's car did not remain on the shoulder of the road when it struck the tree does not preclude a finding that defendant is liable for plaintiff's injuries. It was the defective road, the drop-off, which caused plaintiff to lose control of the vehicle and strike the tree. Liability is imposed not because of the proximity of the tree to the road, but because of defendant's failure to repair the drop-off.

3. The award of $4,161,000 in damages for pain and suffering is not excessive. The award is in accordance with the evidence presented.

4. The trial court erred in reducing the award for loss of earning capacity by the amount of income tax plaintiff would have paid. The case must be remanded to the trial court for computation of plaintiff's lost wages and/or loss of earning capacity without deduction for prospective income taxes.

5. The issue of whether the trial court erred in denying plaintiff's motion to amend her complaint to add a count of intentional nuisance has been waived by plaintiff.

Reversed and remanded for entry of judgment in favor of plaintiff in accordance with this opinion.

R. H. BELL, J., concurred in part and dissented in part. He disagrees with the majority's finding that, from almost daily inspections of the road by defendant, the defect should have been discovered and was not. He believes instead that the evidence of frequent inspections supports a conclusion that the defect was discovered and repaired or that there was no defect. Nevertheless, he stops short of saying that the trial court's conclusion was clearly erroneous. Further, contrary to the trial court's finding, he would hold that the defendant was not negligent in failing to remove the tree. Finally, he disagrees with the majority's conclusion that the award of more than $4 million just for pain and suffering, in addition to more than $3 million for other damages, is not excessive. However, he reluctantly concurs in affirming the award because of being unable to find that the trial court made a mistake in awarding the sum.

OPINION OF THE COURT

1. HIGHWAYS — MAINTENANCE OF HIGHWAYS — LIABILITY FOR INJURIES.

All governmental agencies, state and local, are statutorily liable for injuries arising out of the failure to maintain a highway in

reasonable repair; the duty to maintain a highway in reasonable repair extends to the maintenance of conditions that affect the safety of motorists using the improved portion of the highway for vehicular travel (MCL 691.1402; MSA 3.996[102]).

2. APPEAL — FINDINGS OF FACT — COURT RULES.

The Court of Appeals will not set aside a trial court's findings of fact unless they are clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made (MCR 2.613[C]).

3. HIGHWAYS — MAINTENANCE OF HIGHWAYS — LIABILITY FOR INJURIES.

No governmental agency is liable for injuries caused by a defective highway unless it knew or should have known of the existence of the defect and had reasonable time to repair the defect before the injury occurred (MCL 691.1403; MSA 3.996[103]).

4. HIGHWAYS — MAINTENANCE OF HIGHWAYS — LIABILITY FOR INJURIES — NOTICE OF DEFECTS.

The statute governing suits against governmental agencies for injuries caused by defective highways requires notice of the defect to the governmental agency in one of three ways: 1) actual notice; 2) existence of the defect for thirty days prior to the injury, which establishes a conclusive presumption of notice; or 3) evidence showing that the governmental agency should have discovered and repaired the defect in the exercise of reasonable diligence, i.e., constructive notice (MCL 691.1403; MSA 3.996[103]).

5. HIGHWAYS — MAINTENANCE OF HIGHWAYS — LIABILITY FOR INJURIES — FOUR-WHEEL RULE.

The fact that all four wheels of a vehicle do not remain on the shoulder of a highway when the vehicle leaves the highway and strikes a tree does not preclude liability on the part of the governmental agency which has the duty to maintain the highway where a defect in the highway caused the vehicle to leave the highway in the first place.

6. DAMAGES — PERSONAL INJURY.

Awards for personal injury rest within the sound judgment of the trier of fact, particularly awards for pain and suffering, and there is no absolute standard by which to measure such awards.

7. DAMAGES — PERSONAL INJURY — PAIN AND SUFFERING — APPEAL.

No trier of fact can value pain and suffering with mathematical

certainty; therefore a reviewing court must offer something more tangible than a difference of opinion as to amount before it sets aside a nonjury award as clearly erroneous.

8. DAMAGES — PERSONAL INJURY — FUTURE EARNING CAPACITY — INCOME TAX.

Courts generally must disregard the income tax consequences when fixing damages for lost future earning capacity resulting from personal injuries; deductions for prospective taxes are proper only where specifically provided for by statute.

*Albert N. Deaner,* and *Running, Wise, Wilson, Ford & Phillips* (by *William L. Wise* and *T. J. Phillips, Jr.*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen, James J. Kobza* and *Thomas J. Killeen, Jr.,* Assistant Attorneys General, for defendant in Docket No. 78840.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Brenda E. Turner,* Assistant Attorneys General, for defendant in Docket No. 82957.

Before: R. M. MAHER, P.J., and T. M. BURNS and R. H. BELL,* JJ.

R. M. MAHER, P.J. Plaintiff was seriously injured on September 9, 1982, when the vehicle she was driving on M-55 in Manistee County went out of control and struck a tree. On February 1, 1983, plaintiff commenced this negligence action against defendant, alleging that it violated its statutory duty to maintain the road in reasonable repair and in a condition reasonably safe and fit for travel. MCL 691.1402; MSA 3.996(102). Plaintiff later sought, but was denied, leave to amend her

* Circuit judge, sitting on the Court of Appeals by assignment.

pleadings to add a count of intentional nuisance.[1]
The trial court, sitting without a jury, found in
favor of plaintiff and awarded her damages in the
amount of $7,256,905.[2] Defendant appeals as of
right, challenging the trial court's finding of liabil-
ity and the amount of damages. Plaintiff cross-
appeals from the award of damages.

I

All governmental agencies, state and local, re-
main statutorily liable for injuries arising out of
the failure to maintain a highway in reasonable
repair. *Ross v Consumers Power Co (On Reh),* 420
Mich 567, 591; 363 NW2d 641 (1984). MCL
691.1402; MSA 3.996(102) provides in pertinent
part:

> Each governmental agency having jurisdiction
> over any highway shall maintain the highway in
> reasonable repair so that it is reasonably safe and
> convenient for public travel. Any person sustain-
> ing bodily injury or damage to his property by
> reason of failure of any governmental agency to
> keep any highway under its jurisdiction in reason-
> able repair, and in condition reasonably safe and
> fit for travel, may recover the damages suffered by
> him from such governmental agency. . . . The
> duty of the state and the county road commissions
> to repair and maintain highways, and the liability
> therefor, shall extend only to the improved portion
> of the highway designed for vehicular travel and
> shall not include sidewalks, crosswalks or any
> other installation outside of the improved portion
> of the highway designed for vehicular travel.

---

[1] On July 30, 1984, this Court granted plaintiff's application for
leave to appeal the denial of her motion to amend her complaint
(Docket No. 78840). By order of this Court, that appeal has been
consolidated with the instant appeal.

[2] The award of damages consisted of: $2,500,000 for nursing costs,
$346,950 for medical damages, $249,315 for loss of wages/lost earning
capacity, and $4,161,000 for noneconomic damages.

This statutory duty extends to the maintenance of conditions that affect the safety of motorists using the improved portion of the highway designed for vehicular travel. *Moerman v Kalamazoo Co Road Comm*, 129 Mich App 584, 592; 341 NW2d 829 (1983).

In the instant case, the trial court found defendant negligent for (1) allowing the tree to grow within close proximity to the highway and (2) allowing a two-to-five-inch drop-off between the surface of the road and the shoulder. The court further found that both the tree and the drop-off were dangerous conditions of which defendant had notice prior to the accident.

On appeal, defendant challenges the trial court's finding that it had notice of the drop-off and also challenges the court's conclusion of law that defendant was negligent in not removing the tree. This Court will not set aside the trial court's findings of fact unless they are clearly erroneous. MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243 NW2d 244 (1976).

No governmental agency is liable for injuries by virtue of MCL 691.402, unless it knew or should have known of the existence of the defect and had reasonable time to repair the defect before the injury took place. MCL 691.1403; MSA 3.996(103). Notice may be shown by: (1) actual notice; (2) existence of the defect for over thirty days, which establishes a conclusive presumption of notice; or (3) evidence showing that the agency should have discovered and repaired the defect in the exercise of reasonable diligence, i.e., constructive notice. *Beamon v City of Highland Park*, 85 Mich App

242, 245; 271 NW2d 187 (1978), lv den 405 Mich 831 (1979).

In this case, there is no evidence that defendant had actual notice of the defect, nor was there testimony presented in relation to how long the defect had been present. Although Richard Blast, the supervising engineer of the Department of Transportation Safety Unit Programs, testified that it would take a minimum of two to three months for the edge of the road to erode two inches, this is not evidence that the two- to five-inch drop-off *existed* for thirty days. Thus, the trial court's finding that defendant had notice of the defect cannot be allowed to stand unless we can say that defendant should have discovered and repaired the defect in the exercise of reasonable diligence. *Beamon, supra.* The trier of fact must have been presented with evidence from which it is reasonable to infer that defendant had constructive notice of the defect. *Beamon, supra,* pp 245-246.

Defendant argues that since there is no evidence that the drop-off existed prior to the day of the accident, it must have been created the same day by one of the many logging trucks which frequently travel the road. In this case, the cause of the drop-off is not determinative of defendant's liability, but bears directly on the issue of notice. If defendant was correct that the drop-off was created the same day as plaintiff's accident, we could not say that the defect was sufficiently long-standing to support a verdict of constructive notice. There is insufficient evidence, however, to support the theory that a logging truck created the drop-off on the day of the accident. A view of the scene immediately after the accident revealed no tire tracks from a logging truck, but, rather, only the tire marks from plaintiff's vehicle. Defen-

dant's theory is simply not reasonable in light of the evidence of other possible causes. There was testimony that the drop-off could have been caused by natural erosion combined with routine traffic. There was also testimony that a Manistee County Road Commission broom sweeper could have worsened an existing drop-off. Given the fact that the drop-off existed on the day of the accident, it is reasonable to infer that it had existed for some time.

There was testimony that the Manistee County Road Commission makes periodic observations of the road, specifically looking for drop-offs. These examinations took place at least on a weekly basis, sometimes several times a week or as often as once a day. Therefore, there was evidence from which the trier of fact could reasonably infer that defendant, in the exercise of reasonable diligence, should have discovered and repaired the defect. We cannot say that the trial court's finding of notice is clearly erroneous.

Defendant also argues that the trial court's conclusion that the presence of the tree rendered the highway defective is contrary to law. Relying on *Moerman v Kalamazoo Co Road Comm, supra,* and *Carney v Dep't of Transportation,* 145 Mich App 690; 378 NW2d 574 (1985), lv den 424 Mich 889 (1986), defendant argues that it cannot be held liable for plaintiff's injuries because the vehicle did not strike the tree without any of its wheels leaving the shoulder of the road.

The statutory duty to repair and maintain highways extends to the maintenance of conditions that affect the safety of motorists using the improved portion of the highway designed for vehicular travel. See *Moerman, supra,* p 592, and the cases cited therein. In *Moerman,* the plaintiff alleged that the statutory duty included removing a

tree located near the shoulder of the road. Thus,
the Court was called upon to determine whether
the tree affected the safety of motorists using the
shoulder of the road. The Court resolved the issue
by adopting a "four-wheel" rule:

> If the tree was positioned such that the average
> vehicle could have struck the tree without any of
> the vehicle's wheels leaving the shoulder, the tree
> would affect the safety of motorists using the
> shoulder. Under such circumstances, the defen-
> dant's duty to keep the road reasonably safe would
> extend to the maintenance of the tree."[3] [*Moer-
> man, supra,* p 593.]

In *Carney v Dep't of Transportation, supra,* pp
696-697, another "tree case," this Court followed
the "four wheel" rule stating:

> In this case, plaintiff's automobile was out of
> control and had completely departed from the road
> when it struck the tree. The tree was not within
> reach of a vehicle with all four wheels on the
> shoulder. We must bear in mind the Legislature's
> restriction of defendant's duty 'only to the im-
> proved portion of the highway designed for vehicu-
> lar travel'. MCL 691.1402. The particular allega-
> tions of negligence which are based solely on
> defendant's failure to remove or guard the tree do
> not, in our view, constitute a viable claim under
> MCL 691.1402.

The *Carney* panel, however, went beyond the
*Moerman* holding in finding no violation of the
statutory duty:

> Additionally, we have reviewed the photographic

---

[3] Although the *Moerman* panel reversed its original ruling on
rehearing, its reasons for doing so had nothing to do with its ap-
proach to the scope of the defendant's duty. 141 Mich App 154; 366
NW2d 223 (1984), lv den 422 Mich 979 (1985).

exhibits admitted at trial. This was a country road lined by numerous trees and other vegetation. Defendant's duty to maintain the road in reasonable repair does not entail deforestation of the surrounding countryside. [*Carney, supra,* p 697.]

We do not find *Moerman* and *Carney* controlling in this case. In neither case did the plaintiff allege that there was a defect in the *road.* In neither case did the plaintiff lose control of the vehicle by virtue of the governmental agency's negligence. In this case, it was the defective road—the drop-off—which caused plaintiff to lose control of the vehicle and strike the tree. Defendant cannot be excused from liability, in this case, simply because less than all the wheels remained on the shoulder of the road. Defendant's violation of its statutory duty to maintain the condition of the road set in motion the unfortunate series of events which resulted in plaintiff's injuries. Liability is imposed not because of the proximity of the tree to the road, but because of defendant's failure to repair the drop-off.

II

Defendant argues that the award of $4,161,000 in damages for pain and suffering is excessive. We disagree.

Awards for personal injury rest within the sound judgment of the trier of fact, particularly awards for pain and suffering, and there is no absolute standard by which to measure such awards. *Precopio v Detroit,* 415 Mich 457, 464-465; 330 NW2d 802 (1982). Since this case was tried without a jury, the clearly erroneous standard set forth in the court rules is applied to the amount of damages. MCR 2.613(C).

This Court will substitute its own appraisal of

the record when, even though some evidence supports a finding of fact, a review of the whole record leaves the Court with a definite and firm conviction that a mistake has been made. *Precopio, supra,* pp 465-466; *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). "[S]ince no trier of fact can value pain and suffering with mathematical certainty, a reviewing court must offer 'something more tangible than a difference of opinion as to amount' before it sets aside a non-jury award as clearly erroneous." *Precopio, supra,* pp 470-471, citing *Fishleigh v Detroit United Railway,* 205 Mich 145, 167-168; 171 NW 549, 556 (1919).

In awarding damages the trial court stated:

> At the time of the accident Linda Peterson was a healthy, active mother of one child, Thirty-One (31) years old, and had no physical infirmities, and enjoyed a very active outdoor life as well as the usual indoor activities. She maintained a home and did the usual things but she also hunted, fished, panned gold in Alaska, and was an active outdoor woman. As a result of the defendant's negligence and this automobile accident, she is admittedly a quadriplegic and has been since September the 9th, 1982, and she will be for the rest of her life. She has a life expectancy of Thirty-Eight (38) years from the date of the trial and this is admitted to be a permanent thing. There is no evidence to indicate she will not live the full measure of her life as determined by her life expectancy and therefore, the Court is obligated to find that she will live the life determined by the mortality tables of the State and the Court so finds.

> * * *

> Besides the usual pain and suffering which the plaintiff has been obligated to endure as a result of the accident, the plaintiff will likewise be obligated

to depend on people for the rest of her life. The embarrassment and mortification and humiliation that she must go through to bring other persons into the most private aspect of her life are beyond things that healthy people normally could determine. The loss of enjoyment and the good life that she would have enjoyed, besides the humiliation and mortification for the next 38 years, places upon the Court an obligation to fix damages for which there are no definite standards. No one would change positions with the plaintiff for any sum of money but the mere fact that damages are hard to assess does not relieve the Court from the duty to assess in those cases where damages are hard to determine. The Court feels that a fair award for the non-economic damages which the plaintiff will suffer for pain and suffering, loss of the good life, and the mortification and humiliation that she must endure from the date of the accident for the rest of her life expectancy is worth Three Hundred Dollars ($300.00) a day. If one multiplies Three Hundred Dollars ($300.00) a day for the three hundred sixty-five (365) days a year, they have a yearly damage of One Hundred Nine Thousand, Five Hundred Dollars ($109,500.00). This seems like a small sum to pay for damages when many peoples' employment pays them many times that figure. However, the Court feels Three Hundred Dollars ($300.00) per day to be reasonable and fair and the Court so finds. Three Hundred Dollars ($300.00) a day multiplied by thirty-eight (38) years of the plaintiff's life expectancy totals the sum of Four Million, One Hundred Sixty-One Thousand Dollars ($4,161,000.00) and the Court so awards those damages for the non-economic damage loss in this case.

Evidence of plaintiff's pain and suffering is provided through the testimony of plaintiff and Dr. Charles J. Danek. Needless to say, plaintiff's injuries greatly affect her day-to-day living. She is unable to attend to her needs and is completely

dependent upon nurses for her feeding and cleansing and to move her about. In plaintiff's own words, it is like being "a prisoner in your own body." Plaintiff's pain and suffering is not purely emotional. Even though her neck was broken and she is unable to feel or move her arms and legs, she experiences pain in the form of a burning sensation which is not relieved by medication. In light of the pain and suffering plaintiff has endured and will continue to endure throughout her lifetime, we conclude that the award for pain and suffering is in accordance with the evidence.

III

The final issue on appeal in Docket No. 82957 is raised in plaintiff's cross-appeal. Plaintiff argues that the trial court erred by reducing the award for loss of earning capacity by the amount of income tax plaintiff would have paid. We agree, for the reasons stated in *Gorelick v Dep't of Highways*, 127 Mich App 324, 341-343; 339 NW2d 635 (1983). See also *Dinger v Dep't of Natural Resources*, 147 Mich App 164, 179; 383 NW2d 606 (1985).

We reject defendant's claim that there was no evidence adduced at trial upon which an award for loss of earning capacity could be based. The post-trial briefs submitted in lieu of closing arguments reveal that the parties stipulated that plaintiff's wage loss was $4.54 per hour, or $181.60 per week, $9,443.20 per year, and $363,657.63 per lifetime.

Although we cannot determine whether the award of $249,315 was for lost wages or loss of earning capacity, damages for both are recoverable. *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135, 140; 268 NW2d 317 (1978), lv den 406 Mich 896 (1979). Both items of damages are

dependent upon proof of actual lost wages. *Rohm v Stroud*, 386 Mich 693, 696; 194 NW2d 307 (1972). The stipulation as to plaintiff's hourly wage prior to the accident, together with the severity and permanency of plaintiff's injuries, is evidence from which the trier of fact could have estimated plaintiff's lost wages or lost earning capacity in a manner which went beyond mere conjecture. *Gagnon v Dresser Industries Corp*, 130 Mich App 452, 461; 344 NW2d 582 (1983), aff'd 424 Mich 166 (1985).

This case must be remanded to the trial court for computation of plaintiff's lost wages and/or loss of earning capacity without deduction for prospective income taxes.

### IV

The sole issue raised in plaintiff's second appeal (Docket No. 78840) is whether the trial court erred in denying plaintiff's motion to amend her complaint to add a count of intentional nuisance. Pursuant to plaintiff's statement to the Court at oral argument, this issue is now waived as plaintiff has prevailed on her claim for negligence.

Reversed and remanded for entry of judgment in favor of plaintiff in accordance with Part III of this opinion.

T. M. BURNS, J., concurred.

R. H. BELL, J. *(concurring in part and dissenting in part)*. I disagree with the majority on three key points.

As the majority points out, the finding that defendant had constructive notice of the defect at the road's edge was critical to plaintiff's case. Evidence that this alleged defect even existed on

the day of plaintiff's accident was controverted. The majority finds it reasonable to infer from evidence of defendant's almost daily inspections of the road that the defect should have been discovered and was not. I believe instead that this evidence of frequent inspections supports a conclusion that the defect was discovered and repaired or that there was no defect. Nevertheless, I am reluctant to say that the trial court's conclusion was clearly erroneous. MCR 2.613(C).

Even if defendant was negligent, however, in allowing the drop-off to remain uncorrected, I cannot agree that defendant was negligent in failing to remove the tree. These were alleged by plaintiff, and found by the trial court, to be two separate acts of negligence, but the majority blurs this distinction. This tree was not, as plaintiff insists, "lethal." It did not violate the "four-wheel" rule discussed in the majority opinion. The tree was more than seventeen feet from the edge of the pavement. The trial court found that only the rear tires of plaintiff's van were on the shoulder when the front of the van struck the tree. The trial court found that defendant should have kept the area beyond the shoulder of the highway clear, as it was when the highway was constructed in 1936, but there was no evidence of any requirement that it do so. Nor does the evidence of defendant's roadside maintenance and mowing standards mandate removal of this tree. I cannot agree that the presence of this tree violated the defendant's duty to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. MCL 691.1402; MSA 3.996(102).

Finally, I disagree with the majority's conclusion that the award of more than $4 million just for pain and suffering, in addition to more than $3 million for other damages, is not excessive. I find

this award extraordinarily high and not in conformance with economic reality. However, under *Precopio,* it is extremely difficult for a reviewing court to lower or set aside an excessive award for noneconomic damages. I share the frustration this Court experienced in *Radloff v Michigan (On Remand),* 136 Mich App 457; 356 NW2d 31 (1984), lv den 422 Mich 910 (1985), where the panel reluctantly affirmed an award it deemed extraordinarily high because it was "unable to find that the trial court made a mistake." It seems that I have no choice but to concur in affirming this award.