# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS J. BUCKNER and CYNTHIA R. BUCKNER,

      Plaintiffs/Counterdefendants-
      Appellants,

v

WAYNE BUCKNER and KIM BUCKNER,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
October 25, 2018

No. 340384
Muskegon Circuit Court
LC No. 16-005717-CH

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Plaintiffs, Thomas and Cynthia Buckner, appeal by right the judgments entered against defendants, Wayne and Kim Buckner. We affirm.

## I. BASIC FACTS

This action involves a dispute between two brothers (Thomas and Wayne) along with their respective wives (Cynthia and Kim). The parties own property near each other on the privately owned, dead-end Cedar Creek Drive (also referred to as "the easement" or "easement area") in Holton, Michigan. York Real Estate Development, LLC (York) owns the land underlying Cedar Creek Drive.

The parties acquired their properties at the latest by 1995. Although the parties had been using Cedar Creek Drive to access their properties, neither plaintiffs nor defendants had obtained any express right to access Cedar Creek Drive. In 2016, after discovering that they did not have any recorded access to their property, plaintiffs negotiated an easement with York. Defendants, on the other hand, as of the time of trial, had not obtained any recorded, legal access to their property.

Within the last few years, the relationship between plaintiffs and defendants soured, and issues started to arise between them. Those issues involved defendants improperly piling snow in front of plaintiffs' driveway, defendants improperly grading the easement such that it created an 8-to-12-inch "edge" that make it difficult for plaintiffs to access their property, defendants'

-1-

cutting down plaintiffs' trees, and various other incidents affecting the use of the easement or plaintiffs' property.

Plaintiffs filed suit and alleged that defendants interfered with plaintiffs' use of the easement and also sought damages for trespass involving the cutting down of two of plaintiffs' trees. Defendants' counter-complaint sought a declaration, among other things, that defendants had acquired a legal right to use Cedar Creek Drive as a means to access their property. But defendants did not add York, the owner of Cedar Creek Drive, as a party to their suit. Consequently, the trial court dismissed defendant's counterclaim for easement rights because of the failure to join York—a necessary party.

After the conclusion of the two-day bench trial in August 2017, the trial court ultimately entered three judgments. In the first one, the trial court announced that "Defendants' rights, if any, to use the road or other portions of the [easement granted to plaintiffs] are not an issue in this case and the Court specifically declines to adjudicate such rights." However, in the same judgment, the court ruled that defendants were barred from entering on or placing any snow or other objects in the cabled-off area of the easement area, which represented the southerly 183 feet of the easement area.[1] The court also ruled that issues pertaining to the area north of the cabled-off area would be resolved by the court if the parties did not come to an agreement by September 14, 2017. On September 14, because the parties failed to come to an agreement, the trial court entered another judgment, which it stated would "stand on its own." In this one, the court reiterated that defendants have no right to use of the easement area in the area south of the cable. The trial court then noted that while plaintiffs preferred that defendants perform no maintenance on the easement area, the court realized that this was "unrealistic" because, with plaintiffs away for some of the winter months, defendants would still need to use the easement area to get to the main road and consequently would need to maintain the road, including removing snow from it. Accordingly, the court set up certain requirements that defendants must follow when performing maintenance on the easement road. And on November 21, 2017, the trial court entered a final monetary judgment, in which it awarded a total judgment in the amount of $3,045.47 in favor of plaintiffs. In arriving at this amount, the trial court used the lumber and scrap value for the trees that defendants had cut down on plaintiffs' property. But because the trial court found that no evidence was provided regarding the scrap value for the smaller of the two trees, it only awarded damages for the larger tree.

## II. ANALYSIS

Plaintiffs first argue that the trial court lacked the authority or power to adjudicate defendants' rights to use or maintain the easement area. We disagree. A challenge to the trial

---

[1] Timothy Adams, the principal member of York, testified that he and Cynthia placed the cable in order to mark an area into which snow was to be pushed instead of onto the main road. Adams stated that the now-cabled area had been covered in trees, but trees were removed so the area could be used for this snow-gathering purpose.

court's subject-matter jurisdiction presents a question of law that we review de novo. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007).

Jurisdiction is the power of a court to act and the authority of a court to hear and determine a case. *In re Waite*, 188 Mich App 189, 196-197; 468 NW2d 912 (1991). MCL 600.605 grants circuit courts "original jurisdiction to hear and determine all civil claims and remedies" with certain narrow exceptions.

Plaintiffs rely on the fact that the trial court, in its original judgment, stated that it was declining to address whether defendants had any right to use any portion of the easement area because it had dismissed defendants' countersuit due to defendants not naming York as a party to the suit. However, to the extent the trial court did end up adjudicating defendants' use of the easement, it was allowed to revisit and modify its first ruling. See *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005) ("[A] trial court has unrestricted discretion to review its previous decision[.]"); *Kokx v Bylenga*, 241 Mich App 655, 659; 617 NW2d 368 (2000). Moreover, the fact that the trial court wanted its second judgment to "stand on its own" is indicative that the court was making this second judgment such that no reference to the first judgment would be needed. In other words, the court necessarily would be addressing issues it previously had addressed in the first judgment. The trial court was within its discretion in taking up the issues in this manner, and in doing so, it was free to modify its earlier decisions as it deemed necessary.

Further, "[a] court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint." *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002). And here, plaintiffs' complaint sought "declaratory judgment to determine interest in lands." Specifically, plaintiffs asked the trial court to make, in part, the following declarations: (1) "[t]hat Plaintiffs have the sole and exclusive right to use the Easement Area," (2) "[t]hat Defendant have no right to use the Easement Area to gain access to their property," (3) "[t]hat Defendants may not push snow onto the Easement Area or onto Plaintiffs' properties," "[t]hat Defendants may not damage, cut and/or knock down, or remove trees from or excavate the Easement Area," and (4) "[t]hat Defendants may not use the Easement Area until their right to do so is determined by the Court or at least that Defendants' use of the Easement Area be restricted to the westerly eight feet." Therefore, it is clear that in order to address that which plaintiffs sought in their own complaint, the trial court would have to adjudicate the issue of the extent to which defendants could use and maintain the easement area. Accordingly, because plaintiffs squarely brought the issue of defendants' use of the easement to the court's attention in their complaint, the court had the power or authority to adjudicate it. The fact that defendants' counter-complaint was dismissed is not pertinent, as plaintiffs' complaint was not dismissed.[2]

---

[2] To be clear, plaintiffs do not argue that their claims likewise should have been dismissed for the failure to join York as a necessary party. Instead, plaintiffs' brief, one-paragraph argument on this issue is based solely on the purportedly incompatible rulings contained in the first and second judgments.

Plaintiffs next argue that the trial court erred in applying the measure of damages. Specifically, plaintiffs claim that the trial court erred when it failed to award replacement costs for the trees defendants felled from plaintiffs' property.

We review a challenge to damages in a bench trial for clear error. MCR 2.613(C); *Peterson v Dep't of Transp*, 154 Mich App 790, 799; 399 NW2d 414 (1986). However, to the extent that the proper measure of damages revolves around a question of law, our review is de novo. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010); see also MCL 600.2919(1).

Pursuant to statute, a landowner has a cause of action and a right to treble damages of the amount of actual damages when a person intentionally trespasses and harms property. MCL 600.2919(1). However, a trespasser's good faith and honest belief that he possessed the legal authority to commit the complained-of act are sufficient to avoid treble damage liability for statutory trespass, and to thus limit recovery to actual damages. MCL 600.2919(1)(c); *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 725; 808 NW2d 277 (2010). Here, the trial court found that plaintiffs were not entitled to treble damages because defendants' trespass was based on a good-faith belief and honest mistake regarding the trees at issue, and plaintiffs do not challenge that aspect of the court's findings.

Damages for trespass to land are generally measured by the difference between the value of land before harm and value after harm; however, there is no one fixed, inflexible rule for determining the appropriate sum of damages. *Szymanski v Brown*, 221 Mich App 423, 429; 562 NW2d 212 (1997). Courts should apply whatever approach is most appropriate to compensate for the loss incurred. *Id*. Generally, the most appropriate measure of damages in a trespass action is the land's diminution in value if the injury is permanent or irreparable. *O'Donnell v Oliver Iron Mining Co*, 262 Mich 470, 477; 247 NW 720 (1933). If the injury is reparable, or temporary, the proper measure of damages is the cost of restoration of the property to its original condition, if less than the value of the property before the injury. *Kratze v Independent Order of Oddfellows*, 442 Mich 136, 149; 500 NW2d 115 (1993).

In *Schankin v Buskirk*, 354 Mich 490; 93 NW2d 293 (1958), our Supreme Court specifically addressed the measure of damages available in trespass cases involving the cutting of trees. The Court stated that in addition to considering the value before the trespass and the value after the trespass, a jury may consider "the value of the trees themselves to the contemplated or existing uses of the land, including the cost of replacement or restoration, in those cases where, as here, *the property destroyed has a unique value of its own*." *Id.* at 496 (emphasis added). This unique value can include the aesthetic value of the trees. See *Thiele v Detroit Edison Co*, 184 Mich App 542, 545; 458 NW2d 655 (1990).

While the diminution of value is generally the preferred method to calculate damages, the trial court properly noted that plaintiffs failed to offer any evidence that the value of their property was diminished as a result of the trees being removed. Plaintiffs also did not put forth any evidence or testimony that the two oak trees at issue had a specific aesthetic value to them.

As a result, we conclude that the trial court did not clearly err in finding that the replacement value of the trees was not the appropriate measure of damages. Therefore, we find no error in the trial court using "scrap value" as a measure of plaintiffs' damages.

Affirmed.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel