JERUZAL v. WAYNE COUNTY DRAIN COMMISSIONER.

1. STATUTES—RE-ENACTMENT—JUDICIAL INTERPRETATION.
  The legislature is presumed to have known of the judicial interpretation of a statute and when such a statute is substantially re-enacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the new enactment.

2. DRAINS—SEWERS—CONSTRUCTION OF STATUTES.
  "Sewers," as the term is used in the drain code is not limited to "sanitary" sewers, hence, a sewer designed primarily, if not exclusively, for sanitary purposes may be constructed thereunder (CLS 1956, § 280.1 et seq.).

3. MANDAMUS—JURISDICTION—DRAINS.
  Mandamus is ordered to issue to compel defendant county drain commissioner to issue and sell bonds, to let a contract in accordance with the drain code and to proceed with the construction of a sanitary sewer pursuant to the proceedings had therefor, where defendant does not challenge the Supreme Court's jurisdiction to issue the writ and all subject to the tax for the drain have been properly notified of the drain proceedings (CLS 1956, § 280.1 et seq.).

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  50 Am Jur, Statutes § 442.
[3]  34 Am Jur, Mandamus §§ 197, 199.

4. COSTS—PUBLIC QUESTION—MANDAMUS—SANITARY SEWER.

No costs are allowed in mandamus proceeding to compel county drain commissioner to proceed under the drain code to issue and sell drain bonds, let a contract and proceed with construction of a sanitary sewer, a public question being involved (CLS 1956, § 280.1 *et seq.*).

Original petition for mandamus by George H. Jeruzal and other property owners against Henry V. Herrick, Wayne County Drain Commissioner, to compel construction of project primarily designed as a sanitary sewer and to compel advertising for sale of bonds therefor. Submitted October 15, 1957. (Calendar No. 47,520.) Writ issued December 24, 1957.

*Marx, Levi, Thill & Wiseman (Morley E. Keyes* and *Jesse W. Bollinger,* of counsel), for plaintiffs.

*Samuel H. Olsen,* Prosecuting Attorney, *Hobart Taylor, Jr.,* and *David E. Flayer,* Assistant Prosecuting Attorneys, and *Miller, Canfield, Paddock & Stone (John H. Nunneley,* of counsel), for defendant.

KELLY, J. Plaintiffs filed their application for writ of mandamus (original jurisdiction) as home owners, landowners and developers, seeking a writ directing the Wayne county drain commissioner to install a sanitary sewer in the Lefler-Ready Sanitary Drain district, Dearborn township, Wayne county, Michigan.

The need for such a sewer is set forth in plaintiffs' brief, as follows:

"The plaintiffs' homes already in the area all have attached septic tanks, but because of the high water level and the clay composition of the soil, these tanks cannot operate efficiently. The result is that the stinking, odorous overflow from the tanks rises above the level of the ground and either stagnates there in

puddles, with the accompanied stench, or else flows into the township's crudely constructed open-ditch system which does not properly drain off."

This statement by plaintiffs is not challenged by defendant commissioner.

The Wayne county board of auditors authorized the commissioner to sell bonds in the amount of $679,000 to finance the construction of the drain. On October 16, 1956, the commissioner filed application with the municipal finance commission to approve the sale of the bonds, and on November 27, 1956, the municipal finance commission approved the Lefler-Ready bonds for sale.

In compliance with the provisions of the statute, consents were obtained from the State highway department, the Wayne county road commission, and the Michigan department of health, and the first year's sanitary sewer assessment, in excess of $40,-000, was placed on the tax rolls by defendant commissioner. $30,000 of this amount has been collected.

In June, 1957, defendant commissioner, on advice of his personal counsel, decided not to proceed further toward constructing said sewer, and his reason for such decision is set forth in his answer to this petition for writ of mandamus, as follows:

"(a) That he is advised by his attorneys and by bond counsel that all procedural requirements down to the issuance of bonds have been fully met and no legal question exists as to them, but that he cannot further proceed until the following specific legal question has been finally determined:

"Has the county drain commissioner jurisdiction to construct, under the provisions of the drain law, a project designed solely and only as a sanitary sewer, with no capacity whatsoever for taking care of any storm or surface water drainage?

"(b) That the present Lefler-Ready project is designed as a sanitary sewer, completely closed to surface or storm water drainage.

"(c) That defendant is ready to promptly proceed with the sale of the bonds and construction of the project if it is determined that the commissioner has authority to construct the sewer.

"(d) That the above question must be finally answered by the courts in some proceeding, and this defendant, in view of the admitted facts existing in this case, and the health hazard existing, raises no question as to the form of this action, but urges that a decision be rendered on the merits of the controversy so that defendant will either be able to proceed to sell the bonds and construct the project, or the entire project will be abandoned as being beyond his jurisdiction. That the above-stated question is a legal question only, involving no factual question, and is the sole issue in the case."

The drain commissioner's rights and duties are set forth in the drain code of 1956 (PA 1956, No 40), defined by the Michigan legislature to be:

"An act to codify the laws relating to the laying out of drainage districts, the consolidation of drainage districts, the construction and maintenance of drains, sewers, pumping equipment, and such structures and mechanical devices as will properly purify the flow of such drains; to provide for flood control projects; to provide for water management, water management districts and subdistricts, and for flood control and drainage projects within such districts; to provide for the assessment and collection of taxes; to prescribe penalties for violations of the provisions of this act; and to repeal certain acts and parts of acts."

Section 3 of the act (CLS 1956, § 280.3 [Stat Ann 1957 Cum Supp § 11.1003]) defines "drain" as follows:

"The word 'drain', whenever used in this act, shall include any watercourse or ditch either open or closed, any covered drain, any sewer or conduit composed of tile, brick, concrete, or other material, any structures or mechanical devices, that will properly purify the flow of such drains, any pumping equipment necessary to assist or relieve the flow of such drains and any levee, dyke, barrier, or a combination of any or all of same constructed, or proposed to be constructed, for the purpose of drainage or for the purification of the flow of such drains."

CLS 1956, § 280.275 (Stat Ann 1957 Cum Supp § 11.1275) (section 275 of the drain code), provides in part:

"In cases where the issuing of bonds shall have been determined upon, as herein provided, and subject to the provisions of section 221* of this act, the commissioner may borrow money in anticipation of the collection of such instalments and may issue as evidence thereof the bonds of the drainage district as herein defined. Such obligations shall specify on their face that they are payable out of the instalments of drain taxes to be thereafter collected, and the amount thereof shall not exceed the aggregate of the instalments levied. Bonds issued hereunder shall be signed by the commissioner on behalf of the drainage district, shall be countersigned by the county clerk and shall be payable in annual instalments equal in number to the instalments of taxes, shall mature not earlier than March first nor later than June first of the year following the due dates of the respective instalments of taxes. The number of instalments shall not exceed 20."

Plaintiffs in their reply brief challenge defendant's statement that the sewer is a 100% sanitary sewer, and in this regard say:

---

* CLS 1956, § 280.221 (Stat. Ann 1957 Cum Supp § 11.1221). Reference is to approval by board of county auditors.—REPORTER.

"The first question posed by the defendant is not a true and correct statement of fact. The Lefler-Ready sanitary sewer is not intended to be a 100% sanitary sewer, all of which is known to the defendant and his counsel. Granted that it is primarily a sanitary sewer, it also will be a drainage sewer.

"We do not argue for one moment that the surface drain water will not be carried off by the storm sewer system in this area, which is completely and totally separate and apart from the Lefler-Ready sewer, and is not involved in this litigation.

"There are, however, 2 distinct areas, in which there is substantial drainage water which will find its way into the proposed Lefler-Ready sanitary sewer. In the first place a number of homes already built in the area have drain spouts, the water from which is not carried off, or is not intended to be carried off by the storm sewer system, but which will ultimately find its way into the Lefler-Ready sanitary sewer.

"In the second place, in any homes built in this area in which there are basements, this court may take judicial notice of the fact that under the governmental building codes, both the F.H.A. and local authorities, the builder is required to insert a necessary amount of what is known in the building industry as 'weep tile.' This is a porous tile, which carries off underground drain water that rises above the level of the basement of such homes. This 'weep tile' will conduct such drainage water to what is called 'laterals' in either the alleys or the streets in the Lefler-Ready area involved, which will ultimately tie in to the Lefler-Ready sanitary sewer, as hereinabove described.

"The point is that factually the Lefler-Ready sanitary sewer is not a 100% sanitary sewer, but is intended to include a substantial amount of drainage water, and is in reality proposed to be a combination sanitary and drainage sewer, such as is approved by defendant's counsel in their reply brief."

The Michigan Constitution (1908), art 8, § 15a, provides:

"Any drainage district, established under provision of law, may issue bonds for drainage purposes within such district."

The Constitution does not define the word "drainage."

Prior to 1929 the drain law was established by PA 1923, No 316, and this Court in holding that said act did not authorize the construction of a sewer, in *Clinton* v. *Spencer*, 250 Mich 135, 145, said:

"While there is some authority in other jurisdictions to the effect that a sewer and a drain are synonymous, the legislature of this State has not recognized them to be the same."

The legislature in 1929 by Act No 318 included sewers within the drain act, and this Court commented upon this fact in *Warren Township* v. *Engelbrecht,* 251 Mich 608, 611, as follows:

"We first consider whether the present drain code, as amended by PA 1929, No 318, permits the building of a sewer. It is admitted that a sewer is to be built. In the case of *Clinton* v. *Spencer,* 250 Mich 135, we stated that under the drain code as it existed in 1927, there was no provision for the building of a sewer, and that there was a difference between a drain and a sewer. In an effort to overcome this objection, PA 1929, No 318, was enacted. It amended the previous code by not only providing that the definition of the word 'drain' should include a sewer, but it also amended the title of the former act so as to provide for the building of a 'sewer' as well as a drain. Objection is made to the fact that, notwithstanding these amendments, the body of the act remains substantially as it formerly was and only makes provision for the construction of a drain and not a sewer, except as incidental to the building of a drain in places which require a covered sewer connection."

Defendant states that: "Since the 1929 amendment and the cases decided thereafter, 'drainage purposes' now can be a combination of storm and surface water and sanitary sewage—but clearly not sanitary sewage alone."

The 1956 legislature defined the powers and duties of the drain commissioner and gave its definition of what was meant by "drain," as we have hereinbefore set forth. In passing this legislation, the legislature is presumed to have known of the judicial interpretation of this Court in *Warren Township* v. *Engelbrecht, supra,* 613, which permitted the building of a sewer, and, also, to have known that when a statute, clause or provision thereof, has been construed by the court of last resort of this State and the same is substantially re-enacted the legislature adopts such construction, unless the contrary is clearly shown by the language of the act. See *People* v. *Powell,* 280 Mich 699 (111 ALR 721); 25 RCL, Statutes, § 297, p 1075.

The legislature did not limit "sewers" to "sanitary sewers," and we cannot read such a limitation into the statutory provision. If we have misconstrued legislative intent it can be rectified at the next session of the legislature by a very short and simple amendment to the law as it now exists.

The Court's jurisdiction to issue the writ of mandamus is not challenged by defendant, and defendant does not challenge plaintiffs' statement that the recent decision in *Connor* v. *Herrick,* 349 Mich 201, does not apply. We agree, because in the instant case all who were subject to the tax, and all township, county and State agencies, were properly notified.

A writ of mandamus will issue ordering and directing the defendant to issue and sell bonds, to let a contract in accordance with the drain code, and to proceed with the construction of the Lefler-Ready

sanitary sewer. No costs, a public question being involved.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.