GREGG v STATE HIGHWAY DEPARTMENT

Docket No. 84395. Argued November 8, 1989 (Calendar No. 10).
   Decided July 16, 1990.
   Robert B. Gregg and Nancy E. Gregg brought an action for
   damages in the Court of Claims against the State Highway
   Department as a result of injuries received by Robert Gregg
   when his bicycle struck a pothole located within two white
   lines demarking a bicycle path between the traveled portion of
   a highway and its paved shoulder. The court, Peter D. Houk, J.,
   granted the defendant's motion for summary disposition on the
   basis of governmental immunity, finding that the state's duty
   to maintain highways did not extend to bicycle paths. The
   Court of Appeals, WEAVER, P.J., and GILLIS and M. J. TALBOT,
   JJ., affirmed in an unpublished memorandum opinion in light
   of *Roy v Dep't of Transportation,* 428 Mich 330 (1987) (Docket
   No. 104881). The plaintiffs appeal.
      In an opinion by Justice BRICKLEY, joined by Justices LEVIN,
   CAVANAGH, and ARCHER, the Supreme Court *held:*
      Governmental immunity is not a bar to the plaintiff's cause
   of action. The plaintiff is a member of the class of travelers
   included in § 2 of the highway exception to the governmental
   immunity act, and the area of the road designated for bicycle
   travel comprised part of the improved portion of the highway
   designed for vehicular travel as defined in the act.
      The highway exception to the governmental immunity act
   applies to any person who sustains bodily injury or damage to
   property because of the failure of any governmental agency to
   keep highways under its jurisdiction in reasonable repair and
   in a condition reasonably safe and fit for travel. The words
   "designed for vehicular travel" in the act describe and define
   the improved portion of the highway to which the duty of a
   governmental agency applies. While § 2 of the governmental
   immunity act does not apply to a bicycle path located outside
   the improved portion of the highway designed for vehicular
   travel, the alleged defect in this case occurred upon a bicycle
   path that unquestionably comprised part of the improved por-
   tion of the highway designed for vehicular travel and not on an
   installation separated and detached from the improved portion.
      Justice BOYLE concurred in the result only.
      Reversed and remanded.

Justice GRIFFIN, dissenting, stated that under the plain meaning of § 2 of the governmental immunity act and the holding in *Roy v Dep't of Transportation,* 428 Mich 330 (1987), a shoulder of a highway is not within the exception. It is not designed for vehicular travel, but rather for the temporary accommodation of disabled or stopped vehicles. The language chosen for § 2 makes clear that the duty and liability imposed extends only to that portion of a highway designed for vehicular travel.

Chief Justice RILEY, dissenting, stated that while a plain reading of the definition of shoulder in the Motor Vehicle Code precludes the extension of the government's duty to maintain highways pursuant to § 2 of the governmental immunity act to road shoulders, the definition is logically inconsistent and does not comport with the realities of highway driving. The definition of shoulder in the code should be amended or a new definition created under the governmental immunity act to recognize that road shoulders accommodate vehicular travel and thus require the government to maintain them in a manner reasonably safe for their intended use.

*Stupak & Bergman, P.C.* (by *Frank A. Stupak, Jr.* and *John Bergman*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for the defendants.

BRICKLEY, J. We decide in this case whether the highway exception to governmental immunity[1] ex-

[1] MCL 691.1402; MSA 3.996(102) provides in pertinent part:

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel.

poses the defendants to liability for injuries suffered by a cyclist because of a defect in a designated bicycle path on the inner portion of the paved shoulder of a state highway. The Court of Appeals relied on our decision in *Roy v Dep't of Transportation,* 428 Mich 330; 408 NW2d 783 (1987), to affirm summary disposition in the defendant's favor. We hold that governmental immunity does not bar the cause of action set forth in the plaintiffs' complaint and reverse the decision of the Court of Appeals.

I

The plaintiff alleged he suffered injuries from a bicycle accident on September 10, 1985. The plaintiff apparently went for a ride that evening on his fourteen-speed racing bicycle. He traveled on the west shoulder of State Highway M-35 in Ford River Township, Delta County, at approximately twenty-seven miles per hour.

The plaintiff's bicycle struck a pothole, and rider and bicycle overturned. Plaintiff's complaint alleged a litany of injuries resulting from the accident, including head and back injuries, a broken collar bone, and broken ribs.

The plaintiff filed a complaint in the Court of Claims, alleging that the state had ownership, jurisdiction, and responsibility for the maintenance of highway M-35, and charging that the state had failed to inspect, repair, and warn users of defects in the bicycle path. The complaint further alleged that these negligent acts and omissions constituted the proximate cause of his injuries.

The Highway Department moved for summary disposition asserting governmental immunity and citing our decision in *Roy v Dep't of Transporta-*

*tion* in support. It contended that, consistent with *Roy,* its duty to maintain highways did not extend to bicycle paths. The Court of Claims agreed with defendant's arguments and granted summary disposition. The Court of Appeals affirmed the decision without further analysis, agreeing "that summary disposition was proper in light of our Supreme Court's recent opinion in *Roy v Dep't of Transportation* . . . ."

The plaintiff submitted a photograph of the accident scene with his brief, indicating a pothole located within two white lines. The lines demark a bicycle path running parallel to and seemingly between the traveled portion of the highway and its paved shoulder. The defendants have not contested the accuracy of this photograph.

Because this case was decided on summary disposition, we agree with the defendant that "the only facts before the Court are those allegations as set forth in the Complaint." The plaintiff alleged in his complaint that he was injured on a "designated bicycle path on the west shoulder of said highway . . . ." Our analysis, therefore, is based on the assumption that the bicycle path at issue comprised part of the inner portion of the shoulder closest to the roadway.

II

A

The defendant argues that nonmotorists are not protected parties under § 2 of the governmental immunity act and that such protection is afforded only to "vehicular travel." The defendant notes that the Motor Vehicle Code defines vehicles as

motor vehicles. Hence a bicyclist must be excluded
from protection under § 2.[2]

We think a straightforward reading of the stat-
ute clearly and adequately refutes the defendant's
assertions. The statute extends the immunity ex-
ception to "[a]ny *person* sustaining bodily injury or
damage to his property . . . ." (Emphasis sup-
plied.) The plaintiff certainly qualifies as one to
whom the duty to maintain safe highways extends
and the waiver of immunity applies.

However, the "vehicular travel" language of § 2
seized upon by the defendant clearly does not limit
the class of travelers who may recover damages
for injuries due to defects on the improved portion.
The words "designed for vehicular travel" describe
and define the "improved portion of the highway"
to which the duty of the governmental agency "to
keep any highway under its jurisdiction . . . safe
and fit for travel" applies.[3] MCL 691.1402; MSA
3.996(102).

B

Defendant also contends that exception to im-
munity under § 2 does not extend to the instant
case. In defendant's view, the path was not de-

[2] MCL 257.79; MSA 9.1879 defines a vehicle as "every device
. . . excepting devices exclusively moved by human power . . . ."
MCL 257.4; MSA 9.1804 defines a bicycle as a "device propelled by
human power . . . ."

[3] Similarly, and contrary to dicta in *Roux v Dep't of Transportation*,
169 Mich App 582; 426 NW2d 714 (1988), the language and purpose of
the highway immunity statute implies that the standard of care
imposed on highway authorities applies to persons and not the
vehicles in which they travel. It allows recovery to "[a]ny person
sustaining bodily injury or damage to his property" and requires
maintenance of highways "reasonably safe and convenient for public
travel." Therefore, although the exception to immunity limits the
duty of the state to "the improved portion of the highway designed
for vehicular travel," the standard of care allows a cause of action for
persons—both motorists and nonmotorists—entitled to travel on the
improved portion.

signed for "vehicular travel" because the shoulder of the road exists solely for "emergency accommodation."

In *Roy, supra,* we held that bicycle paths *adjacent* to, but not a part of, a highway did not comprise part of the improved portion designed for vehicular traffic and hence did not remove governmental immunity from suit. We concluded in *Roy:*

> [T]he exception to immunity found in § 2 of the governmental immunity act does not apply to bicycle paths. The [highway exception to immunity] does not apply to an "installation outside of the improved portion of the highway designed for vehicular travel." A bicycle path is not designed for vehicular travel, in the common sense of "vehicular" as relating to motor vehicle. [428 Mich 340.]

We further stated:

> [T]he statute does not offer general protection to pedestrians or motorists without regard to location. The statute announces a duty to repair and maintain the highway so that the improved portion designed for vehicular travel is reasonably safe and convenient for public travel. The criterion used by the Legislature was not based on the class of travelers, but the road on which they travel. [428 Mich 341.]

The trial court and Court of Appeals erred in granting summary disposition in this case on the basis of *Roy.* In the instant case, unlike *Roy,* the plaintiff has alleged the bicycle path and the location of the defect occurred on the shoulder of the highway immediately adjacent to its regularly traveled portion. The defect here did not occur on an installation, as in *Roy,* separated and "de-

tached" from the improved portion. The allegedly
defective bicycle path in this case unquestionably
comprised part of the highway. " 'Shoulder' means
that portion of a *highway* . . . ." MCL 257.1501(k);
MSA 9.3200(1)(k). (Emphasis added.)

Neither the defendants nor the dissent contends
that this paved shoulder is not part of the im-
proved portion of the highway. However, they do
contend that the highway's shoulder does not com-
prise that part of the improved portion of the
highway "designed for vehicular travel." Framed
this way, the crucial issue involves whether the
paved shoulder of the road is "designed for vehicu-
lar travel."

The dissent cites *Goodrich v Kalamazoo,* 304
Mich 442; 8 NW2d 130 (1943), a case decided
under a predecessor statute in support of the
argument that the Legislature in enacting §2 of
the current statute did not intend the shoulder of
the road to be excepted from the statute's general
grant of immunity. *Goodrich* concerned a fourteen-
foot-wide paved road bounded by approximately
"three-foot" wide "dirt and gravel" shoulders. The
plaintiff struck a tree that was "about 30 inches
from the edge of the pavement" and therefore a
part of the shoulder of the road. *Id.* at 444. Since
the dirt and gravel shoulder was only approxi-
mately three feet in width and apparently had at
least one tree growing on it, it is not surprising
that the court found the shoulder not to be a part
of the " 'traveled' portion of the road." *Id.* at 446.

We would not disagree that a three-foot-wide
dirt and gravel shoulder adorned with an occa-
sional tree is not "designed for vehicular travel"
under today's statute or any statute. As in *Good-
rich,* we would probably conclude that such a
shoulder was also not part of the "improved por-

tion" of the highway.[4] Similarly, it does not seem surprising that when the Court of Appeals began analyzing shoulder-accident cases under our current immunity exception statute, it made no reference to *Goodrich.*

In *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971), lv den 385 Mich 762 (1971), the Court of Appeals observed correctly we think, that the shoulder from which the plaintiff was returning to the traveled portion of the road, like shoulders generally, was "designed for vehicular traffic although not of the same character as vehicular traffic on the paved portion of the highway." *Id.* at 39. Other Court of Appeals panels, without exception, have followed that precedent. See *Van Liere v State Hwy Dep't,* 59 Mich App 133; 229 NW2d 369 (1975), and *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984).

The dissent accurately points out that the Legislature has been quick to correct the result of Court of Appeals decisions that have extended the § 2 exception to governmental immunity. We find it persuasive that the Legislature has not included in those correcting amendments the result of an uninterrupted line of cases extending from 1971 that conclude that a shoulder is designed for vehicular travel.

The dissent points to § 59a of the Michigan Vehicle Code, which describes the shoulder of the road, as "not designed for vehicular travel but

---

[4] We distinguished *Goodrich* in *Ballinger v Smith,* 328 Mich 23, 27-33; 43 NW2d 49 (1950), a case interpreting a statute requiring parked vehicles to display lamps on a highway. We held in *Ballinger* that the duty to display lamps on the highway encompassed a vehicle parked on a shoulder "intended for the use of vehicular traffic in an ordinary and reasonable manner." *Id.* at 32. The Court rejected *Goodrich* as controlling, noting that the "fact that [a tree thirty inches from the edge of the pavement] was left in [that] position necessarily leads to the conclusion that the place it occupied was not designed or maintained for traffic." *Ballinger, supra* at 32-33.

maintained for temporary accommodation of disabled or stopped vehicles . . . ." MCL 257.59a; MSA 9.1859(1). *Post,* p 321. That the Legislature did not in our view intend this to be a definition of vehicular travel under § 2 of the governmental immunity act is made evident by another section of the Motor Vehicle Code which states: " 'Shoulder' means that portion of a highway or street on either side of the roadway which is normally snowplowed for the safety and convenience of *vehicular traffic.*" MCL 257.1501(k); MSA 9.3200(1)(k). (Emphasis supplied.)

Moreover the contention that the Legislature did not intend to include highway shoulders under the § 2 exception has an obvious flaw: it flies in the face of common experience. Any motorist who has ever experienced a highway emergency understands that shoulders are essential to a safe modern highway. To get on or off a shoulder to stop, park, or leave standing a vehicle, motorists must travel on the shoulder.

At the high speeds of modern vehicles, such an endeavor often results in significant travel, "in the ordinary sense," on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort.

More technically, the Motor Vehicle Code is quite precise in its definitions. It defines *roadway* quite narrowly as "that portion of a highway improved, designed, or ordinarily used for vehicular travel." MCL 257.55; MSA 9.1855. On the other hand, it defines "[h]ighway or street . . . [as the] *entire width* between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." MCL 257.20; MSA 9.1820, and

MCL 257.64; MSA 9.1864. (Emphasis supplied.) If the Legislature had intended liability for the failure to maintain safe *roadways* only, it seems the Legislature would have done just that. It did not.

The conclusion that shoulders do not comprise part of a highway's improved portion, taken to its logical extreme, could lead to illogical results. Such outcomes seem incongruous with a statute that plainly commands highway authorities to safely repair and maintain highways for public travel. Such outcomes surely do not "clearly express[ ] [the] intent of the Legislature . . . ." *Post,* p 318.

Finally, not only did *Roy* concern a bicycle path that was separate and apart from the roadway and the shoulder of the highway, but it concerned a path on which motor vehicles would have no occasion to enter for any reason. Furthermore, our analysis of *Roy* supports the different result in this case. In concluding our analysis in *Roy,* we said:

> This interpretation fits within each of the interpretative clues identified above. It satisfies the express wording of § 2 which limits the duty created there to less than the full highway. It does not frustrate the policy announced in other statutes of protecting bicyclists by requiring them to use bicycle paths, where provided, in preference to roads, *because bicycles on bicycle paths are not exposed to the hazards which arise from mixing bicycle and vehicular means of travel. [Id.* at 341. Emphasis supplied.]

The "mixing bicycle and vehicular means of travel" is precisely what has occurred here. The white lines in this case drawn along the border of the road may have been designed to confine bicycle travel, but could not possibly have been designed to prohibit vehicular travel consistent with the

shoulder's statutory purpose of accommodating disabled vehicles.[5]

III

Because the plaintiff is one of the "class of travelers" included in § 2 and because the area of the road designated for bicycle travel comprised part of the improved portion of the highway designed for vehicular travel as defined in that statute, we reverse the judgment of the Court of Appeals and remand the case to the Court of Claims for proceedings consistent with this opinion.

LEVIN, CAVANAGH, and ARCHER, JJ., concurred with BRICKLEY, J.

BOYLE, J., concurred in the result only.

GRIFFIN, J. (*dissenting*). Recently, we emphasized again in *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990), that the duty and liability created by § 2, the highway exception to the governmental immunity act,[1] extends "*only* to the improved *portion* of the highway *designed for vehicular travel* and shall *not* include sidewalks, crosswalks or any other installation *outside* of the improved portion of the highway designed for vehicular travel."[2]

In this appeal, we are called upon to decide whether a bicycle path, contiguous to the main traveled portion of a highway and separating that

---

[5] We think this question would be closer if the bike path had been on the outer fringes of the shoulder, thereby making vehicular travel thereon unlikely, especially if the shoulder was wide enough to accommodate both an automobile and the bike path.

[1] MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*

[2] MCL 691.1402; MSA 3.996(102) (emphasis added).

portion of the highway from its shoulder, is within the "improved portion of the highway designed for vehicular travel." Because a strict construction of the highway exception is required, not only by the plain language of the statute but also by the clearly expressed intent of the Legislature as well as the prior decisions of this Court, I must dissent from the majority's holding which expands the reach of liability beyond the "improved portion of the highway designed for vehicular travel."

I

Repeatedly, this Court has stressed that the governmental immunity act is a "broad grant of immunity" with "four narrowly drawn statutory exceptions . . . ."[3] When the Legislature adopted the definition of "governmental function" set forth in *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 594, n 5; 363 NW2d 641 (1984), "the Legislature put its imprimatur on the *broad* scope of immunity . . . and, by implication, the *narrow* scope of the exception."[4] As Chief Justice RILEY reiterated most recently in *Scheurman, §2* is a

_____

[3] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984). See also *Scheurman, supra*, p 627; *Reardon v Dep't of Mental Health*, 430 Mich 398, 411; 424 NW2d 248 (1988); *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 146; 422 NW2d 205 (1988); *Smith v Public Health Dep't*, 428 Mich 540, 591-592; 410 NW2d 749 (1987); *Thomas v State Hwy Dep't*, 398 Mich 1, 9, n 3; 247 NW2d 530 (1976); *Pittman v Taylor*, 398 Mich 41, 62; 247 NW2d 512 (1976) (COLEMAN, J.); *Pichette v Manistique Public Schools*, 403 Mich 268, 277; 269 NW2d 143 (1978).

The four statutory exceptions are MCL 691.1402; MSA 3.996(102) (highway repair); MCL 691.1405; MSA 3.996(105) (negligent operation of government-owned motor vehicle); MCL 691.1406; MSA 3.996(106) (public buildings); MCL 691.1413; MSA 3.996(113) (proprietary function).

A fifth statutory exception was added by 1986 PA 175, MCL 691.1407(4); MSA 3.996(107)(4) (ownership or operation of a hospital or county medical care facility).

[4] *Reardon*, n 3 *supra*, p 412 (emphasis added).

"narrowly drawn exception to a broad grant of immunity," and as such

> there must be strict compliance with the conditions and restrictions of the statute. No action may be maintained under the highway exception unless it is clearly within the scope and meaning of the statute. [*Id.,* p 630. Citations omitted.]

In its opinion today, the majority broadly interprets the phrase "improved portion of the highway designed for vehicular travel" to encompass a bicycle path as part of the shoulder of the highway and cites several Court of Appeals decisions[5] issued prior to our opinion in *Roy v Dep't of Transportation,* 428 Mich 330; 408 NW2d 783 (1987).[6]

As I see it, the plain wording of § 2, the highway exception, as well as this Court's holding in *Roy,* compel the conclusion that the shoulder of a highway is not designed for vehicular travel; rather, it is designed for the temporary accommodation of

---

[5] *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971); *Van Liere v State Hwy Dep't,* 59 Mich App 133; 229 NW2d 369 (1975); *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984).

[6] It is noteworthy that the Legislature has acted to restrict the effect of several Court of Appeals decisions which broadly interpreted the highway exception. See, e.g., *Moerman v Kalamazoo Co Rd Comm,* 129 Mich App 584; 341 NW2d 829 (1983), and *Carney v Dep't of Transportation,* 145 Mich App 690; 378 NW2d 574 (1985) (holding that there is a duty to maintain a tree along the road if the tree is positioned so that the average vehicle could strike the tree without any of its wheels leaving the shoulder); *McMillan v State Hwy Comm,* 130 Mich App 630; 344 NW2d 26 (1983), and *Davis v Chrysler Corp,* 151 Mich App 463; 391 NW2d 376 (1986) (holding that there is a duty to maintain a utility pole located on or in proximity to the traveled portion of a highway). Prior to the enactment of 1986 PA 175, the term "highway," for purposes of the governmental tort liability act, was defined as "every public highway, road and street which is open for public travel and shall include bridges, sidewalks, crosswalks and culverts on any highway. The term 'highway' shall not be deemed to include alleys." MCL 691.1401; MSA 3.996(101). The definition, as amended, now provides in part: "The term 'highway' does not include alleys, *trees,* and *utility poles.*" (Emphasis added.)

disabled or stopped vehicles. While the word
"highway" includes that portion of the highway
referred to as the "shoulder," the language of § 2,
so carefully and deliberately chosen by the Legisla-
ture, makes very clear that the duty and liability
imposed by this statutory exception is limited, and
does not reach across the full breadth of the
highway. It extends only to a *portion* of the high-
way—that portion "designed for vehicular travel."

## II

In determining that the bicycle path in *Roy* was
not within the highway exception, this Court re-
lied on indications in the governmental immunity
act that "the Legislature intended to use applica-
ble terms in that act with the same meaning as
they have in . . . the Motor Vehicle Code."[7] *Id.* at
338. For example, the *Roy* Court pointed to § 5 of
the governmental immunity act which specifically
incorporates by reference certain definitions pro-
vided in the Motor Vehicle Code.

After noting that both acts employ the term
"vehicular travel," and after reviewing the com-
mon usage and definitions in the Motor Vehicle
Code of such words as "highway" and "vehicle,"
the *Roy* Court concluded:

> The careful tailoring of terms in the governmen-
> tal immunity act to the definitions in the Motor
> Vehicle Code convinces us that the Legislature
> intended these terms of the governmental immu-
> nity act to be understood in light of the definitions
> of the Motor Vehicle Code. [*Id.* at 340.][8]

Applying definitions found in the Motor Vehicle

[7] MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*

[8] In a footnote the Court stated, "Terms not under consideration in
this opinion might not have been subject to the same legislative
intent." *Id.*, n 17.

Code, this Court concluded in *Roy* that a bicycle is not a "vehicle," and that a "bicycle path is not designed for vehicular travel" within the meaning of the governmental immunity act. *Id.*

In light of our decision in *Roy,* it could hardly be said in this case that the bicycle path, as such, comes within the scope of the highway exception. However, the majority seeks to avoid the *Roy* holding by focusing instead upon the allegation in plaintiff's complaint that he was injured on a " 'designated bicycle path *on the west shoulder of said highway.' "[9]*

Until today this Court has never held that the shoulder is within the "improved portion of the highway *designed for vehicular travel.*" Such a construction ignores the teaching of *Roy* that, absent a valid reason, the definitions provided in the Motor Vehicle Code are to be used in construing the highway exception to governmental immunity.

The term "shoulder" is defined in the Motor Vehicle Code:

> "Shoulder" means that portion of the highway contiguous to the roadway generally extending the contour of the roadway, *not designed for vehicular travel* but maintained for the *temporary accommodation of disabled or stopped vehicles* otherwise permitted on the roadway. [MCL 257.59a; MSA 9.1859(1). Emphasis added.]

Obviously, this definition of "shoulder" requires the conclusion that the "improved portion of the highway *designed for vehicular travel*" does *not* include the shoulder. Because it is designed only for "temporary accommodation," rather than "vehicular travel," the duty and liability imposed by

---

[9] *Ante,* p 310. (Emphasis added.)

the highway exception do not extend to the shoulder.[10]

This interpretation is consistent with other provisions of the Motor Vehicle Code. For example, it provides that the driver of a vehicle "shall drive the vehicle upon the right half of the roadway,"[11] and that a driver who overtakes or passes another vehicle "upon the right by driving off the pavement or main-traveled portion of the roadway" is responsible for a civil infraction.[12]

Moreover, the Motor Vehicle Code makes it unlawful, outside the limits of any city or village, for a vehicle to "be stopped, parked, or left standing, attended or unattended, upon the paved or main traveled part of a highway, when it is possible to stop, park, or to leave the vehicle off the paved or main traveled part of the highway."[13] Needless to say, the words "stop, park, or to leave" standing are not the equivalent of "travel." In construing a statute, words and phrases are to be given their ordinary and common-sense meaning.[14]

[10] Without challenging the position that definitions provided in the Motor Vehicle Code are applicable in construing the governmental immunity, the majority seeks to avoid the effect of MCL 257.59a; MSA 9.1859(1) by pointing to another section of the code: " 'Shoulder' means that portion of the highway or street on either side of the roadway which is normally snowplowed for the safety and convenience of vehicular traffic." MCL 257.1501(k); MSA 9.3200(1)(k), *ante*, p 315.

We find nothing in the latter provision to be inconsistent. Both sections recognize that the shoulder is not designed for vehicular travel. For "safety and convenience" sake, of course, snowplowing is required during winter periods to make the shoulder available for the "temporary accommodation of disabled or stopped vehicles." However, that does not say or mean that the shoulder is designed for "vehicular travel."

[11] MCL 257.634; MSA 9.2334 (emphasis added). The Motor Vehicle Code defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel." MCL 257.55; MSA 9.1855.

[12] MCL 257.637(c)(2); MSA 9.2337(c)(2).

[13] MCL 257.672; MSA 9.2372.

[14] *Stadle v Battle Creek Twp*, 346 Mich 64, 68; 77 NW2d 329 (1956);

In the ordinary sense, a shoulder is *not* designed for *travel*; it is designed for *interruption* of travel.

Finally, it cannot be overlooked that this Court has previously ruled that the shoulder of a highway is not designed for vehicular travel. In *Goodrich v Kalamazoo Co,* 304 Mich 442; 8 NW2d 130 (1943), the plaintiff was injured when his motor vehicle left the main traveled portion of the highway and struck a tree located within the shoulder. Referring to the statute then in effect, this Court said:

> The responsibility of the defendant . . . is only that the highway be kept "reasonably safe and convenient for public travel."
>
> * * *
>
> It is quite uniformly held that the above-noted duty . . . applies to the *traveled portion* of the road and *not to the entire width of the highway.*
>
> * * *
>
> The shoulder of the road has been held not to be a part of the "wrought" or "traveled" portion of the road.
>
> * * *
>
> It is not within the statutory duty of the [defendant] to maintain shoulders of improved . . . highways so that such shoulders will be "reasonably safe and convenient for public travel" in the same sense that the [defendant] is required to so maintain the paved or improved portion which is designed for ordinary or normal travel. Instead the shoulders are constructed and maintained for other and restricted uses; and the requisite condition of maintenance varies accordingly. [*Id.* at 445-448. Emphasis added.]

To be sure, the language of the governing statute at the time of *Goodrich* varied from the stat-

MCL 8.3a; MSA 2.212(1).

ute in effect today. However, the authority of *Goodrich* is all the more persuasive because legislative changes made since then have moved in the direction of narrowing and limiting the scope of the duty.[15]

Prior to enactment of the governmental immunity act, 1964 PA 170, the duty required of governmental units applied broadly and without qualification to "roads" and "public highways." The duty then imposed was not expressly limited, as it is now, to the "improved portion of the highway designed for vehicular travel." As we recognized in *Roy,* the obvious purpose of the Legislature in choosing the words in the current highway exception, was to "focus on a more tightly drawn duty reflected in the departure . . . from the more in-

---

[15] When *Goodrich* was decided, the statute applicable to counties provided:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel. [1929 CL 3996; MCL 224.21; MSA 9.121.]

The statute then applicable to townships, villages and cities provided:

[A]ny person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets . . . in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway [or] street . . . and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages . . . . [1897 CL 3441, as amended by 1951 PA 19, MCL 242.1; MSA 9.591 repealed by 1964 PA 170 (current provision MCL 691.1402; MSA 3.996[102]).]

clusive tone of predecessor legislation." *Roy, supra* at 341.[16]

Furthermore, since the Legislature is presumed to know the existing law when it enacts or amends a statute,[17] it is significant that the Legislature, subsequent to *Goodrich,* narrowed the scope of the duty from "highway" to that "portion of the highway designed for vehicular travel." In light of this Court's determination in *Goodrich* that shoulders are not designed for vehicular travel, the adoption subsequently of such limiting language lends strong support to the conclusion that the Legislature intended to exclude the shoulder of a highway from the scope of the duty imposed.

### III

Clearly, under *Roy,* a bicycle path, in and of itself, is not within the highway exception. The majority's sole basis for distinguishing *Roy* is that in this case the bicycle path is part of the highway's shoulder. However, under the instruction of *Roy* that the highway exception is to be read in light of definitions supplied by the Motor Vehicle Code, it is clear that the shoulder is *not* within the scope of that portion of the highway "designed for vehicular travel."

Accordingly, I would affirm the decision of the Court of Appeals.[18]

RILEY, C.J. (*dissenting*). In *Scheurman v Dep't of Transportation,* 434 Mich 619, 631; 456 NW2d 66 (1990), we interpreted § 2 of the governmental

[16] See also *Scheurman, supra* at 629, n 2.

[17] *Jeruzal v Wayne Co Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957).

[18] In light of the expansive construction of the highway exception provided by the Court today, I join in the Chief Justice's suggestion that the Legislature should consider further amendment of the statute to clarify the extent to which governmental immunity is waived by MCL 691.1402; MSA 3.996(102). *Post,* p 326 (RILEY, C.J.).

immunity act[1] and stated the " 'improved portion
of the highway designed for vehicular travel' re-
fers only to the traveled portion, paved or un-
paved, of the roadbed actually designed for public
vehicular travel."

I agree with Justice GRIFFIN that a plain read-
ing of the definition of "shoulder" in the Motor
Vehicle Code[2] precludes the extension of the gov-
ernment's duty to road shoulders pursuant to § 2.
However, I also believe that the definition of
"shoulder"[3] in the Motor Vehicle Code is logically
inconsistent and does not comport with the reali-
ties of highway driving.

There can be no doubt that, to a limited extent,
shoulders are designed and used for vehicular
travel. Shoulders have to accommodate vehicles in
emergency situations. To reach the shoulder and
come to a stop, a vehicle necessarily has to
"travel" on the shoulder. Also, vehicles may have
to attain a high rate of speed on road shoulders in
order to ease back into traffic. Furthermore, many
highways and roads, such as the highway in this
case, have paved shoulders. The fact that a shoul-
der is paved lends support to the idea that shoul-
ders are designed to accommodate limited vehicu-
lar travel.

Thus, I would urge the Legislature to amend the
definition of "shoulder" in the Motor Vehicle Code,
or create a new definition for the governmental
immunity act. I ask the Legislature to recognize

[1] MCL 691.1401 et seq.; MSA 3.996(101) et seq.

[2] MCL 257.1 et seq.; MSA 9.1801 et seq.

[3] MCL 257.59a; MSA 9.1859(1) provides:

"Shoulder" means that portion of the highway contiguous to
the roadway generally extending the contour of the roadway,
*not designed for vehicular travel* but maintained for the tempo-
rary accommodation of disabled or stopped vehicles otherwise
permitted on the roadway. [Emphasis added.]

that road shoulders do accommodate vehicular travel. Though a shoulder is not a main traveled lane, the government should be responsible for maintaining a shoulder reasonably safe for its intended use. Such a definition would be consistent with this Court's interpretation of § 2 in *Scheurman*.