Kelly, J.
(dissenting). The issue presented is whether the shoulder of the road is part of the “improved portion of the highway designed for vehicular travel” for purposes of the highway exception to governmental immunity. MCL 691.1402(1). Unlike the majority, I would reaffirm this Court’s holding in Gregg v State Hwy Dep’t,[1] and hold that a shoulder is “designed for vehicular travel.” Therefore, I would affirm the decision of the Court of Appeals.
STANDARD OF REVIEW
The trial court denied defendant’s motion for summary disposition. We review such rulings de novo. Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999).
In making our de novo review, we are called on to determine an issue involving statutory construction. Such matters are questions of law that also are reviewed de novo. Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 62; 642 NW2d 663 (2002). Our primary goal in construing the meaning of statutes is to determine the intent of the Legislature. Everyone on the Court is in accord that, if a statute’s language is clear and unambiguous, it must be enforced as written. People v Laney, 470 Mich 267, 271; 680 NW2d 888 (2004). Also, it is generally agreed that the Legislature is presumed to have intended the meaning expressed in the words it wrote. Roberts, supra at 63. All words and phrases are “construed and understood according to the common and approved usage of the language ....” MCL 8.3a.
*94 analysis
The immunity of government from suit is made possible by the governmental tort liability act (GTLA), MCL 691.1401 et seq. It sets forth the basic tenets of governmental immunity: “Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.” MCL 691.1407(1). There are a few exceptions. One is contained in MCL 691.1402(1), which is commonly referred to as the “highway exception.” It provides, in relevant part:
[E]ach governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.... The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [Emphasis added.]
“Highway” is defined by the GTLA as “a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway.” MCL 691.1401(e). “Shoulder” is not defined in the GTLA.
I believe that this Court’s decision in Gregg correctly interpreted these statutory provisions. It recognized that, for purposes of the highway exception to govern *95 mental immunity, a shoulder is part of the highway “designed for vehicular travel.” Gregg, supra at 317. The Gregg Court reached its decision for three reasons.
First, the Court noted that, beginning in 1971, the Court of Appeals has consistently held that the shoulder of a highway is designed for vehicular travel. Id. at 314.[2] In making this ruling, the Court applied the concept of legislative acquiescence. Since the Legislature chose not to amend the GTLA in the face of numerous holdings of the Court of Appeals, it acquiesced in the Court of Appeals interpretation of the law. Id.
Second, the Court held that it would fly in the face of “common experience” to hold that a highway shoulder is not designed for vehicular travel. Id. at 315. The Court reasoned that all motorists understand that, because a shoulder is an essential safety feature of a highway, it is part of the highway. Specifically, the Court stated that
[t]o get on or off a shoulder to stop, park, or leave standing a vehicle, motorists must travel on the shoulder.
At the high speeds of modern vehicles, such an endeavor often results in significant travel, “in the ordinary sense,” on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort. [Id.]
Third, the Court considered relevant definitions found in the Michigan Vehicle Code (MVC). MCL 257.1 et seq. Id. Specifically, it considered the MVC definitions *96 of “highway” and “roadway.” It noted that the MVC definition of “highway”[3] is broader than the definition of “roadway.”[4] It then concluded that the Legislature’s use of the word “highway” rather than “roadway” in the highway exception statute showed that it intended that shoulders be considered as designed for vehicular travel. Id. at 315-316.
The majority concludes that the rationale presented in Gregg is unpersuasive. It states that Gregg should be overruled because, under the majority’s “strict construction” approach, a shoulder is not “designed for vehicular travel.”
MCL 8.3a and numerous recent decisions from this Court emphasize that we should give words their ordinary meanings in construing statutes.[5]
[6]In fact, this Court often refers to dictionary definitions to interpret the meanings of words. A dictionary is a codification of the “common experience” meanings of words. I believe that the Gregg Court properly emphasized the mandate of MCL 8.3a when it held that “it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort.” Gregg, supra at 315.
Moreover, Gregg’s holding is consistent with dictionary definitions for “design” and “travel.” Random *97 House Webster’s College Dictionary (1995) defines “design” as “to intend for a definite purpose^] ” It defines “travel” as “to move or pass from one place or point to another.”
Defense counsel’s admission at oral argument comported with the Gregg Court’s “common experience” reasoning. Counsel conceded that shoulders are designed for vehicular travel “of a sort.” Emergency vehicles travel on the shoulder, and the Michigan Department of Transportation (MDOT) typically diverts vehicular traffic onto shoulders during construction. Given these facts, defense counsel admitted that shoulders are designed for travel “of a sort.”[6]
Certainly, MDOT would not permit motorists to drive their vehicles from one place to another on a portion of the highway that is not designed for vehicular travel. These facts, together with traditional notions of statutory construction, strongly support Gregg’s reasoning. The majority’s conclusion that the “common experience” approach is inconsistent with the statutory language is flawed in light of this Court’s current practices and MCL 8.3a.
The majority also takes issue with Gregg’s use of legislative acquiescence. This issue has arisen numerous times in the last several years. I continue to believe that we should consider legislative acquiescence when construing statutes. See Donajkowski v Alpena Power Co, 460 Mich 243, 270-273; 596 NW2d 574 (1999) (KELLY, J., dissenting). Since 1971, when appellate cases began defining “designed for vehicular travel,” the Legislature has amended the highway exception three times. But it did not see fit to alter the judicial inter *98 pretation of those words.[7] The Legislature’s acceptance of Gregg is highly persuasive.[8]
In summary, I believe that Gregg was correctly decided. I would affirm it on the basis of (1) basic accepted principles of statutory interpretation, (2) defense counsel’s unrebutted admission that a shoulder is designed for vehicular travel “of a sort,” (3) MDOT’s use of shoulders for diversion of vehicular traffic during construction, and (4) the fact that the law in question has remained unaltered since 1971.
In holding that shoulders are not “designed for vehicular travel,” the majority admits that several interpretations are available but chooses the narrowest one possible.[9] Essentially, it argues that giving the words “designed for vehicular travel” their plain ordinary meaning swallows the exception, because a vehicle could travel on every improved part of a highway. This argument has three flaws:
First, the majority fails to remember that, although drivers rarely travel on medians or embankments, they do routinely travel short distances on shoulders. Moreover, MDOT specifically requires vehicles to travel on shoulders for long distances. The same cannot be said for other highway improvements.
*99 Second, as explained in Wexford Med Group v City of Cadillac,[10] a court should not make an interpretation not intended by the Legislature because it fears what will develop if it interprets the language as written. Id. at 220 n 10. The majority suggests that giving the statute’s language a meaning other than the narrowest possible meaning would create the risk of unlimited liability, which is something it must avoid. Its conclusion contradicts Wexford, apparently out of a subjective fear.
Third, the only issue before the Court is whether a shoulder is designed for vehicular travel. Whether other improved portions of the highway are designed for vehicular travel is a question best left to cases that raise and explore that possibility.
Ultimately, the majority’s reasoning fails because of the language of the statute and because of the fact that vehicles do indeed travel on shoulders that were designed for travel. By contrast, the reasoning in Gregg is soundly supported by the meaning of the words in the statute and by common practice. Moreover, Gregg is properly in line with the majority’s rules of statutory interpretation.
CONCLUSION
I would reaffirm this Court’s decision in Gregg and hold that the shoulder of a highway is “designed for vehicular travel” within the meaning of the highway exception to governmental immunity. I base this position on (1) time-honored principles of statutory interpretation, (2) defense counsel’s unrebutted admission that a shoulder is designed for vehicular travel, (3) MDOT’s actions of actually diverting traffic onto the *100 shoulders of highways, and (4) the fact that Michigan courts have followed this interpretation since 1971. Therefore, I would affirm the decision of the Court of Appeals.
CAVANAGH, J., concurred only in the result proposed by Kelly, J.

 435 Mich 307; 458 NW2d 619 (1990).

 See, e.g., Johnson v Michigan, 32 Mich App 37, 39; 188 NW2d 33 (1971); Van Liere v State Hwy Dep’t, 59 Mich App 133, 136; 229 NW2d 369 (1975); Hall v Dep’t of State Hwys, 109 Mich App 592, 602 n 4; 311 NW2d 813 (1981); McKee v Dep’t of Transportation, 132 Mich App 714, 721; 349 NW2d 798 (1984); Roux v Dep’t of Transportation, 169 Mich App 582, 586; 426 NW2d 714 (1988).

 MCL 257.20 defines “highway” to include “the entire width between the boundary lines.”

 MCL 257.55 defines “roadway” to include only the portion of a highway “improved, designed, or ordinarily used for vehicular travel.”

 See, e.g., People v Monaco, 474 Mich 48; 710 NW2d 46 (2006); Griffith v State Farm Mat Automobile Ins Co, 472 Mich 521, 526; 697 NW2d 895 (2005); Halloran v Bhan, 470 Mich 572, 578; 683 NW2d 129 (2004); Gilbert v DaimlerChrysler Corp, 470 Mich 749, 763; 685 NW2d 391 (2004); Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002).

 The majority does not even attempt to contradict this admission.

 The Legislature amended the statute in 1990, 1996, and 1999.

 The majority asserts that the Court’s ruling in Gregg was based on the assumption that the Legislature had acquiesced in the Court’s earlier decisions. This ignores the fact that the Gregg Court went further. It based its holding primarily on an interpretation of the language of MCL 691.1402(1) that gave an ordinary meaning to the word “travel.”

 The majority suggests that it does not need to apply Ross v Consumers Power Co (On Rehearing), 420 Mich 567; 363 NW2d 641 (1984), to this case. In actuality, the majority does apply Boss and reads the statute narrowly.

 474 Mich 192; 713 NW2d 734 (2006).